[No. 22293.   Department One.   July 15, 1930.]

JOSEPH BETHEL (*substituting as Plaintiff for S. J. Lombard*), *Appellant,* v. THAD B. PRESTON et al., *Respondents.*[1]

[1]Reported in 290 Pac. 224.

W. H. Pemberton, Roy D. Robinson, and R. J. Faussett, for appellant.

Edwin H. Flick, Stanley Kent, and Stuart D. Barker, for respondents.

TOLMAN, J.—This is an action to recover a broker's commission of five per cent upon the sale price of a large body of timber land located in the Hood's canal district. The cause was tried to the court, sitting without a jury, resulting in findings of fact and conclusions of law favorable to the defendant, and a judgment based thereon dismissing the action. The plaintiff has appealed from the judgment of dismissal.

The contract between the parties was made by a series of telegrams and letters (they never having personally met), and is therefore in writing. The trial court held these writings were sufficient to avoid the ban of the statute of frauds, and, after a careful consideration of that question, we conclude that the lands were accurately described by reason of references to the location, the sending and marking of a plat and all other necessary descriptions which were contained in the correspondence. We therefore approve the trial court's holding upon that issue. *Jones-Scott Co. v. Ellensburg Milling Co.,* 108 Wash. 73, 183 Pac. 113.

There remains to be decided only just what the extent of the agency thus created was, and whether appellant so far complied with its terms as to entitle him to the compensation fixed.

Appellant is, and was, a broker residing in the city of Seattle, and respondents (the owners of the timber land) resided in Ionia, Michigan. The initial move-

ment, as disclosed by the record, came from appellant, who, on February 11, 1924, wired to respondent T. B. Preston:

"Patterson is in California and information concerning your timber in 24 north 3 west not available is this still for sale have buyer ready to make examination wire me day letter our expense authority to sell on basis of five per cent commission stating price and amount down.                                                   S. J. Lombard."

To which respondent replied, under date of February 14, 1924:

"Price on twenty four dash three lands has been three fifty thousand basis seventy millions commission five per cent when sale fully completed.
                                                   "T. B. Preston."

This was followed by a letter of confirmation, bearing the same date, which reads:

"Your wire regarding the lands in 24-3 W came during my absence, and I have wired you on my return as follows:

" 'Price on twenty-four dash three lands has been three fifty thousand, basis seventy millions, commission five per cent when sale fully completed,'
which I confirm.

"If you are not interested in the lands, please advise me by return mail, and if you are, let me know regarding the particulars."

On February 26, 1924, appellant wrote to respondent discussing the matter of cruising the timber, referring to a possible purchaser to whom he had written, and sent a blueprint, and in which letter he said:

"I am quite sure that Mr. George Miller desires to acquire this property and, before I am through with it, intend to give him an opportunity to purchase although, frankly, I would rather make a sale to some one else on account of his attitude in the matter. Mr. Miller is my neighbor and I have talked with him several times concerning this tract.

"I have no doubt but that our offers to cutting mills will stir both George Miller and the White-Clough interests to action but with a desire to go direct and defeat me in any sale.

"May I request of you Mr. Preston that, should either of these gentlemen endeavor to acquire an option, you please refer them to me. As you no doubt are aware Mr. Miller is connected with the Boeing interests and the Union National—Mr. Swalwell and Mr. White with the Discovery Bay Logging Co. and the Hamma-Hamma Logging Co. and the Clough-Hartley interests. I will keep you advised from time to time."

To this letter respondent replied under date of March 3, 1924:

"Yours of the 26th ultimo, I find on my return this morning, and have noted very carefully all that you have said in explanation of the situation, and I am forwarding a copy of your letter today to Mr. W. J. Patterson.

"I will be glad to have you keep this in mind, but of course, you understand that a commission is due and payable only on a deal made through either me or Mr. Patterson, direct, which has the full approval of either of us, and only on the consummation and final closing of a sale, and no obligation of any kind exists prior to that, and then only through a transaction direct with either of us.

"I would be glad to have you keep me posted on any developments."

The correspondence continues with more or less regularity from then on until a sale was consummated, through the Mr. Patterson referred to, in April, 1925. Nothing contained in this voluminous mass of letters and telegrams in any way modifies or changes the agreement outlined in what we have already quoted, and much appears to show that the agency, thus established, continued in full force until the respondent accepted the offer made by the interests represented by one George Miller, which offer was forwarded through

Patterson. The subsequent correspondence furnishes a full legal description of the property involved so as to comply with the statute of frauds, and nothing is left uncertain save the price and the terms; and if appellant produced a purchaser ready, able and willing to buy at a price and on terms satisfactory to the respondent, he complied with his contract and earned his commission.

Did he so produce a purchaser? Appellant had a number of conversations with Miller very early in his campaign, but apparently did not then, or at any time, directly urge Mr. Miller to buy. Apparently he investigated Miller's business situation, became convinced that he would need and desire this timber eventually, but that he would naturally postpone the investment as long as he could safely do so. Appellant then directed his efforts toward creating a situation which would convince Miller that he must buy at once or run the risk of seeing someone else acquire the property. So successful was the appellant in this direction that, according to Patterson's testimony produced on behalf of respondent, Miller came to him about the matter in October, 1924. Patterson then knew of appellant's employment by reason of respondent having forwarded to him copies of the correspondence with appellant, but he, nevertheless, without disclosing at first that Miller was the man he had in mind, informed the respondent that he thought he could make a sale. Patterson did disclose the fact of Miller's interest in the matter later, and, before the sale was made, respondent was fully informed. But of course all of this dealing with Miller through Patterson was carefully concealed from the appellant until the sale was fully consummated.

If this was an exclusive agency, the respondent, as owner, might have made a sale to some one other than

a purchaser produced by the broker without being liable for the broker's commission. The language of the letter of March 3, 1924, which we have quoted, seems to place Patterson in the same position as the respondent, and he, too, at any time, could have made a sale to some one other than the broker's prospect without liability; but, whether the agency was exclusive or not, neither Patterson nor the respondent, when they had well known for seven or eight months that Mr. Miller was the broker's principal objective, and that he, the broker, with respondent's consent and approval, was working upon Miller by indirect methods, had any right, as soon as Miller began to show the promised interest, to disregard what had been done and assume, because appellant had not actually talked price and terms to Miller, that therefore appellant had not produced him as a purchaser.

We do not mean to say that, where, because of the nature of the property, a broker may be able offhand to name every person likely to become a purchaser, he thereby puts himself in a position to claim his commission whenever one of the named persons purchases— far from that. Here, wisely or otherwise, the broker determined upon an indirect course, so advised his principal, who at least did not disapprove, and faithfully followed out his plan for over a year, only to be then told that the principal had just closed a sale to his prospect. No doubt the principal had the right to so close the sale, but the broker also had the right to be paid the agreed commission.

The judgment is reversed with directions to enter a judgment in favor of appellant for an amount equal to five per cent upon the price for which the property was sold together with interest thereon at the legal

658

rate from the date of the consummation of the sale to Miller.

MITCHELL, C. J., BEALS, MILLARD, and MAIN, JJ., concur.