[No. 42255. En Banc. October 19, 1972.]

JIM HOUSE, *Petitioner*, v. HAROLD ERWIN *et al.*, *Respondents.*

*Kelly Hancock,* for petitioner.
*John Hancock,* for respondents.

NEILL, J.—The Court of Appeals held a real estate broker's employment contract, commonly known as a "listing" agreement, unenforceable by reason of the inadequacy of the real estate description. *House v. Erwin,* 5 Wn. App. 737, 490 P.2d 883 (1971). In reaching that result the Court of Appeals reversed the trial court. We granted review (80 Wn.2d 1004). We reiterate herein only such of the facts as are necessary to frame the issue brought here by the petition for review.

Plaintiff, respondent in the Court of Appeals and petitioner here, is a licensed real estate broker in Okanogan County. On February 24, 1969, defendants Harold Erwin and Chris E. Albrecht signed a listing agreement with plaintiff. The agreement is a standard printed form for farm or ranch property containing blank spaces, including spaces for insertion of the legal description. But for the defendants' signatures, all blanks on the contract were filled in by the plaintiff broker. The property description portion of the listing agreement states:

> Description: 534 acres, known as Albrecht-Erwin Ranch farm or ranch described as Legal to be attached. Sec. ............ T............N/S, R............E/W of ............M., County of Okanogan, State of Wn.; for better description see owner's title deed on record, now made a part hereof.

(Underlined words and figures are the handwritten portion.) In fact, defendants were purchasing the farmlands under a recorded real estate contract; so there was no "title deed" on record. There was a deed on record of other Okanogan County farmlands owned by defendant Erwin.

Under RCW 19.36.010(5) contracts of this nature must be in writing and signed by the party to be charged. There is a split of authority in this country as to the requirement of a specific legal description of the property which is the subject matter of a real estate broker's commission contract. *See Sufficiency, Under Statute of Frauds, of Description or Designation of Property in Real-Estate Brokerage Contract,*

Annot., 30 A.L.R.3d 935 (1970); 12 Am. Jur. 2d *Brokers* § 46 (1964). For nearly 60 years, in an unbroken line of cases, Washington has been aligned with the states applying the stricter rule as to the sufficiency of land description. *E.g., Heim v. Faulstich,* 70 Wn.2d 688, 424 P.2d 1012 (1967); *Leo v. Casselman,* 29 Wn.2d 47, 185 P.2d 107 (1947); *Big Four Land Co. v. Daracunas,* 111 Wash. 224, 190 P. 229 (1920); *Cushing v. Monarch Timber Co.,* 75 Wash. 678, 135 P. 660 (1913). We have relaxed this rule so as to alleviate any practical burden upon real estate brokers by upholding such contracts where the seller has *expressly* authorized the broker to subsequently attach a legally sufficient description to the brokerage contract. *Noah v. Montford,* 77 Wn.2d 459, 463 P.2d 129 (1969); *Edwards v. Meader,* 34 Wn.2d 921, 210 P.2d 1019 (1949).

The main thrust of plaintiff's argument on appeal is that the language of the listing agreement brings the contract within the rule of *Edwards v. Meader, supra.* We are in accord with the holding of the Court of Appeals on this issue. The language of the agreement, unbuttressed by parol evidence, does not constitute express authorization for the agent to procure and attach the complete description of the realty. We adopt the analysis of the Court of Appeals on this point. *House v. Erwin, supra* at 740.

However, although the property description in the listing agreement in the case at bench does not satisfy our established rule, it is suggested that we overturn 6 decades of established precedent, align ourselves with those states taking a contrary view in the mentioned split of authority, and thereby uphold the enforceability of the contract before us.

The judicial process once may have been regarded more as a search for precedent than as a logical, rational development of principles and rules which respond to the needs and mores of a changing society. If stare decisis is imposed merely out of reverence to the past, it may result in blind adherence to unworkable and harmful precedent or, just as undesirably, serve as a label to camouflage the

subjective conclusions of prior judges. So applied, the doctrine has properly been subject to criticism.

But as properly viewed, the doctrine retains vital importance. A basic function of any legal system is to provide rules by which people may guide their conduct in society. To fulfill this purpose, it is essential that the law be reasonably certain, consistent and predictable. In this respect, stare decisis serves an important and valid function. As we observed in *In re Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970):

> Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also recognize that stability should not be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned.

We have no objection to changing a rule of law provided that, consonant with the above principle, we are convinced that the existing rule is incorrect and harmful and that a less harmful alternative is available. The integrity of the legal system—and the basic function that people rightfully expect it to perform—demand these prerequisites to change. These considerations are especially important in an area such as transactions involving realty, where there is particular reliance on the certainty of the applicable legal rules.

With the foregoing in mind, we consider the suggestion that we overturn our long-standing rule as to the sufficiency of subject matter description in real estate broker's employment contracts.

We see no harm or undue inconvenience in the existing rule. In cases involving real estate brokers' contracts, we

are not dealing with an unsophisticated or overreached party. Brokers in this state must be licensed after successfully taking a comprehensive real estate brokers' examination.

The rule in this state regarding the sufficiency of the description of the real estate in a broker's contract has been firmly established for several decades, and is well known by every licensed broker. In practically all cases, the brokers prepare the commission contract. If the detailed legal description is not available at the time of the execution of the contract, the broker may provide in the agreement for its subsequent attachment—a simple matter. *See Noah v. Montford, supra.* In our view, a less stringent rule would open the door to uncertainty, ambiguity and disputes in an area of endeavor where definiteness is of particular importance, thereby contradicting the purpose for which section 5 was added to our statute of frauds. Laws of 1905, ch. 58, § 1, p. 110; RCW 19.36.010 (5).

The Court of Appeals reached the correct result herein, following long established and relied upon precedent. We are not convinced that the existing rule is incorrect and harmful. Accordingly, the judgment of the trial court is reversed.

HAMILTON, C.J., ROSELLINI, HALE, and STAFFORD, JJ., concur.

WRIGHT, J. (dissenting)—This case presents a specific question of whether a contract for payment of a commission to a real estate broker must contain a full legal description of the property to be sold. This case also presents a deeper question of whether a court should be bound by prior decisions if such prior decisions are wrong.

The Court of Appeals in *House v. Erwin,* 5 Wn. App. 737, 490 P.2d 883 (1971) reversed the trial court and held for defendants. We granted review. *House v. Erwin,* 80 Wn.2d 1004.

The facts are set out in the majority opinion. Possibly better understanding will be aided by some clarification on

one matter. The majority mentions "There was a deed on record of other Okanogan County farm lands owned by defendant Erwin." The other property in the county owned by one of the defendants could not possibly by any stretch of imagination have caused confusion herein, and is not relevant to this litigation.

Three matters were raised at the trial in defense. Defendants contended the listing agreement was not signed by Effie M. Albrecht, wife of Chris E. Albrecht. She was present at the signing, and at several conversations. Furthermore, she talked to plaintiff on the telephone on occasions. The trial court found she ratified the agreement. That finding was not challenged and, therefore, is not now before the court.

Defendants also contended plaintiff was not the procuring cause of the sale. The trial court found "the plaintiff was the procuring cause of the sale." The Court of Appeals did not consider the matter, saying: ". . . it is unnecessary for us to decide whether plaintiff was the procuring cause of the sale." The finding of the trial court was based on substantial evidence and we are firmly committed to the rule that a finding of fact by the trial court will not be disturbed if based on substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959); *Coy v. Raabe,* 77 Wn.2d 322, 462 P.2d 214 (1969).

Defendants' third contention, relating to the lack of an adequate description, was considered by the Court of Appeals and is the only matter now before the court.

The contract or "listing agreement" is shown in the accompanying illustration.

Defendants contend this description is inadequate to comply with RCW 19.36.010, which reads in part:

In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . .

(5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.

This statute was enacted for the purpose of preventing fraud. The statute of frauds enacted by the legislature of Washington Territory in 1854, Laws of 1854, § 2, p. 403, did not contain subsection (5) which is involved here. That was added by Laws of 1905, ch. 58, § 1, p. 110.

The purpose of the enactment was well stated by Finley, J. in *Miller v. McCamish,* 78 Wn.2d 821, 828, 479 P.2d 919 (1971) wherein it was said:

As we have previously noted, there can be little question as to the intent of the legislature in the enactment of RCW 19.36.010 and RCW 64.04.010. The clear purpose and intent behind these statutes of frauds is the prevention of fraud. To apply these statutes in such a manner as to promote and encourage fraud would be to *defeat the clear and unambiguous intent of the legislature in their enactment.*

Clearly, the fraud sought to be prevented by RCW 19.36.010(5) relates to disputes as to the amount of commission or compensation, the term of the listing agreement, if exclusive or nonexclusive, and most important, if any agreement existed at all. It seems scarcely conceivable for a dispute to arise over the identity of property listed with a broker.

A better rule was stated in *Pray v. Anthony,* 96 Cal. App. 772, 777, 274 P. 1024 (1929), wherein it was said:

As uniformly held by numerous decisions in this state upon the subject, the essential part of a contract to employ a real estate broker, so far as the statute of frauds is concerned, is the matter of the employment and consequently need not describe the land specifically, if the terms of the employment can be made definite without it.

An even more interesting case is *Central Idaho Agency, Inc. v. Turner,* 92 Idaho 306, 442 P.2d 442 (1968), which involved a contract on exactly the same printed blank as is involved herein. Idaho, just as Washington, had a long line of cases holding a perfect description of the property was

essential to a real estate broker's contract of employment. The Idaho court overruled several cases inconsistent with the *Central Idaho Agency* case stating at page 311:

> A contract employing a broker to find a purchaser of real property, is not a contract to sell, convey, or encumber real property or any interest therein. It is purely a contract of employment for services to be performed by the broker for a commission to be paid upon the occurrence of certain specified events. Ordinarily such a contract would not support an action to compel conveyance of the property involved. The present action does not seek any such relief. It was brought solely for the recovery of the commission provided for in the agreement. In such a case the description in the agreement is sufficient where it is shown that there is no misunderstanding between the property owner and the broker as to the property to be offered for sale, and where it is sufficient to enable the broker to locate the property, show it, and point out its boundaries to the prospective purchaser. In this case both plaintiff and defendant knew from the description contained in the agreement that the property to be sold was the entire "Clara Turner farm." The farm was well known in the neighborhood. Its exact acreage and location as to county and section numbers was readily available and could be established by parol or other extrinsic evidence without varying, adding to, or subtracting from the agreement which the parties intended to make. Such evidence would apply the description to the land in harmony with the manifest intention of the parties.
>
> We conclude that the description in the brokerage agreement involved herein was sufficient for the purposes of this action.

A real estate broker's employment contract need not contain a complete legal description of the property being listed in order to satisfy the requirements of the statute of frauds, RCW 19.36.010 (5), if the contract is clearly understandable. The language of the statute requires "such agreement, contract or promise, or some note or memorandum thereof, [to] be in writing, . . .". The writing herein satisfied the requirement of the statute.

To the extent they are in conflict herewith, the following cases, and all other cases in conflict herewith, should be

specifically overruled: *Cushing v. Monarch Timber Co.,* 75 Wash. 678, 135 P. 660 (1913); *Thompson v. English,* 76 Wash. 23, 135 P. 664 (1913); *Salin v. Roy,* 81 Wash. 261, 142 P. 679 (1914); *Nance v. Valentine,* 99 Wash. 323, 169 P. 862 (1918); *Rogers v. Lippy,* 99 Wash. 312, 169 P. 858 (1918); *Larue v. Farmers & Mechanics Bank,* 102 Wash. 434, 172 P. 1146 (1918), *adhered to on rehearing,* 104 Wash. 693, 176 P. 331 (1918); *Kuh v. Lemcke,* 107 Wash. 45, 180 P. 889 (1919); *Big Four Land Co. v. Daracunas,* 111 Wash. 224, 190 P. 229 (1920); *White v. Panama Lumber & Shingle Co.,* 129 Wash. 189, 224 P. 563 (1924); *Black v. Milliken,* 143 Wash. 204, 255 P. 101 (1927); *Farley v. Fair,* 144 Wash. 101, 256 P. 1031 (1927); *Grammer v. Skagit Valley Lumber Co.,* 162 Wash. 677, 299 P. 376 (1931); *Leo v. Casselman,* 29 Wn.2d 47, 185 P.2d 107 (1947); *Geoghegan v. Dever,* 30 Wn.2d 877, 194 P.2d 397 (1948); *Heim v. Faulstich,* 70 Wn.2d 688, 424 P.2d 1012 (1967).

In order to avoid any possible misunderstanding, I wish to make it absolutely clear I am dealing with and construing the real estate broker's commission provision contained in RCW 19.36.010(5) and not with requirements of any other statute or statutes.

The Court of Appeals should be reversed and the judgment of the superior court should be reinstated.

HUNTER and UTTER, JJ., concur with WRIGHT, J.

FINLEY, J. (dissenting)—In 1897, Justice Holmes sagaciously observed:

> It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

O. Holmes, *The Path of the Law,* 10 Harv. L. Rev. 457, 469 (1897).

The majority opinion, whether anticipating some dissent or not, does render brief lip service to the thoughts and operating principle posed by the statement of Justice

Holmes. But then, as though suddenly shocked at such an approach, or stricken by some sense of disloyalty or compelling necessity as to stare decisis, the majority turns to the doctrine in an endurable and unshakable embrace.

The majority certainly does not demonstrate any strong or compelling reason for this 180 degree retreat to a stare decisis rationale. The switch from giving lip service to the juristic principle emphasized by Holmes to an antithetic application of stare decisis in this case seems to me dictated more by habit and rather sterile, automatic thinking than by critical, careful and responsible reasoning. Contrariwise, the Holmes statement seems to me reasonably applicable to the case before us for it provides a persuasive basis for reaching a better-reasoned, more rational resolution of the problem involved than was reached by this court in a number of previous cases. The statute involved, RCW 19.36.010, was in my judgment wrongly construed soon after its enactment, and this wrong construction has unnecessarily been followed blindly by the court for a number of years. In this, the court has confused the requisites of a real estate commission contract with the requirements of precise legal descriptions in contracts or other documents for the actual conveyance of title or an interest in real property. This latter type of situation is certainly not involved in the instant case.

The necessity of an exact property description in a contract to convey land arises from the fact that the land itself is at once the subject and the most basic element of the agreement. To require that a contract dealing with that land be in writing, and then to admit parol evidence to identify the land, would be inconsistent with the fraud prevention purpose of the statute of frauds. As applied to land *sale* contracts, the substance of the statute of frauds assumes that the presence of a writing will more reliably prove the transfer or conveyance of an interest in land, as well as the quantum, existence and location of the land being sold, than will the admission of parol evidence. Where a land *sale* contract is unclear in its description of

realty, to admit parol evidence to identify the land is to subvert the purpose of the statute of frauds.

There is no comparable justification for requiring a legally expert and precise description in a real estate *commission* contract. The identification of the land in question is subsidiary to, and not necessarily relevant to, the creation of the brokerage relationship. I am convinced that RCW 19.36.010 requires a writing to show *only the existence of an agreement to create such a relationship*; a legally precise description of land is unnecessary. This position is evidenced by the obvious absence of any language within the statute requiring a legal description of property in such brokerage agreements. Rather, RCW 19.36.010 demands only a writing to evince the contract for the payment of a commission. *Stewart v. Preston,* 77 Wash. 559, 137 P. 993 (1914); *Peirce v. Wheeler,* 44 Wash. 326, 87 P. 361 (1906). The purpose of this requirement of a writing is to prevent fraudulent and deceptive activities in the commissioned sale of realty. *Heim v. Faulstich,* 70 Wn.2d 688, 424 P.2d 1012 (1967). The very fact that no fraud was *or could have been* perpetrated upon the vendors by the real estate broker in the instant case suggests in itself that the fraud prevention purposes of the statute were met by the written commission contract before this court, notwithstanding the majority's characterization of the property description as inadequate. All parties—vendors, broker, and purchaser—knew beyond doubt which 534-acre parcel of realty, described in the listing agreement as the "Albrecht-Erwin Ranch", was referred to in this contract. This fact is shown by the subsequent sale of the 534-acre Albrecht-Erwin Ranch by the Albrechts, as vendors, to a purchaser whose interest in the property was occasioned by the activities of the broker. The opinion of the majority suggests that any body of precedent to be overruled must first be found to be harmful. In the case before us, to permit the vendors to avoid a contractual duty to compensate the broker for the services which he faithfully rendered in advertising and arranging the sale of the real property in ques-

tion as the result of a technicality of questionable origin is to so extend a misconstruction of the statute of frauds as to *authorize the perpetration of fraud* upon the broker. The majority's condition precedent is met by its "blind adherence to unworkable and harmful precedent."

Indeed, authority may be found which suggests that questionable precedent need not be harmful before it may be overruled, as long as no harm is created by overruling such precedent. In *In re Estate of Yand*, 23 Wn.2d 831, 162 P.2d 434 (1945), we stated at page 837:

> While long acquiesence in an erroneous decision may make the decision a rule of property or practice and raise it to the dignity of law, it must not be understood that a previous line of decisions affecting even property rights can in no case be overthrown. . . .
>
> If a series of decisions are clearly incorrect, through a mistaken conception of the statute or rule, and no injurious results would follow from overruling those decisions, it is the duty of the court to overrule those decisions.

The point to be made is simply that the doctrine of stare decisis is a judicial tool which should be wielded only to render a just and reasoned result. Further evidence of the doctrine's pliability is the fact that Washington authority exists for the proposition that reliance upon precedent is inappropriate in cases involving statutory construction, such as the instant case. *See Windust v. Department of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958); *Petersen v. Department of Labor & Indus.*, 40 Wn.2d 635, 245 P.2d 1161 (1952). Blind adherence to precedent, then, would require that this court *ignore* the doctrine of stare decisis in this case. A reasonable middle position was, however, suggested in *Powell v. Superior Portland Cement, Inc.*, 15 Wn.2d 14, 18, 129 P.2d 536 (1942), and should be followed in the instant case:

> While due deference should be paid to precedent, the question in determining whether to accept or reject the precedent is *how far it accords with good sense or reason*; that is, the law should not be confined to precedents,

but consists in the reason of them, as "the reason of the law is the soul of the law."

(Italics mine.) In accord with this Washington standard are some of this nation's leading jurists both past and present. Similar in substance to the earlier-stated thoughts of Justice Holmes, the observations of Justice Cardozo on the application of precedent are suggested in the following:

I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment.

B. Cardozo, *The Nature of the Judicial Process* 150 (1921). In like manner, Justice Brandeis, in *Di Santo v. Pennsylvania,* 273 U.S. 34, 42, 71 L. Ed. 524, 47 S. Ct. 267 (1927), commented upon the overzealousness in the approach of the judiciary to stare decisis:

It is usually more important that a rule of law be settled, than that it be settled right. . . . But the doctrine of *stare decisis* does not command that we err again . . . In the search for truth through the slow process of inclusion and exclusion, involving trial and error, it behooves us to reject, as guides, the decisions upon such questions which prove to have been mistaken.

Justice Douglas, noting that it is easy to "over-emphasize stare decisis as a principle in the lives of men" (W. Douglas, *The Supreme Court: Views From Inside* 123 (1961)), suggested the following:

It is, I think, a healthy practice (too infrequently followed) for a court to reexamine its own doctrine. Legislative correction of judicial errors is often difficult to effect. Moreover, responsible government should entail the undoing of wrongs committed by the department in question. That course is faithful to democratic traditions. Respect for any tribunal is increased if it stands ready . . . not only to correct the errors of others but also to confess its own.

W. Douglas, *Stare Decisis,* 49 Colum. L. Rev. 735, 746-47 (1949). While the United States Supreme Court has evidenced its willingness to utilize the doctrine as a judicial

tool to ensure consistency and predictability in our law, several cases suggest a comparable willingness to reject precedent when it is realized that the doctrine may perpetuate a statute's misconstruction or an unjust ruling. *See, e.g., Erie R. Co. v. Tompkins,* 304 U.S. 64, 82 L. Ed. 1118, 58 S. Ct. 817, 114 A.L.R. 1487 (1938) (overruling a century of precedent established in *Swift v. Tyson,* 41 U.S. (16 Pet.) 1 (1842)) and *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 81 L. Ed. 703, 57 S. Ct. 578, 108 A.L.R. 1330 (1937) (overruling *Adkins v. Children's Hosp.,* 261 U.S. 525, 67 L. Ed. 785, 43 S. Ct. 394, 24 A.L.R. 1238 (1923) and thereby declaring the Minimum Wage Act to be a violation of due process).

Our sister states appear no less inclined to recognize the doctrine's point of diminishing returns. The Supreme Court of Illinois for example, during the 150-year period from 1818 to 1968, overruled 170 of its previous decisions in 140 opinions, with a time lapse between original and overruling decisions varying from a period of only 4 months in one instance to a period of 110 years in another, the average span for all cases being less than 15 years. *See* Moran, *Stare Decisis in an Era of Judicial Activism: One State's Answer,* 1 U. Tol. L. Rev. 51 (1969).

Our own court has earlier stated its position as one of refusing to yield to the doctrine of stare decisis when to do so would perpetuate error and sacrifice principle. *State ex rel. Bloedel-Donovan Lumber Mills v. Savidge,* 144 Wash. 302, 258 P. 1 (1927); *Schramm v. Steele,* 97 Wash. 309, 166 P. 634 (1917). The majority's decision to succumb to questionable precedent without sound basis in logic or reason to support such a position seems to be, in itself, a break with this court's tradition of closely examining the legal principles upon which our opinions rest, thereby ensuring against the further extension of error. Perhaps this is due to the fact that cogent reasoning will not support the precedential construction of RCW 19.36.010 upon which the majority relies, since it is evident that the judicial requirement of a legally precise description of property to be sold is both

unjustified and unnecessary in a real estate commission contract. Under these circumstances, the following comment seems applicable:

> It is not the rule of stare decisis that is odious, but the blind and stubborn adherence to it and its use as an excuse for not finding the time and the inclination to decide that bad, old rules must be changed, . . .

F. Hare & F. Hare, Jr., *Stare Decisis,* 31 Ala. Law, 273, 281-82 (1970).

Because of the resulting injustice to the appellant-broker in this case which inheres in the rigid and unwarranted devotion to outmoded and mistaken precedent, I believe that it is time to correct a persistent error of interpretation and to cease to make this particular statutory provision a means of fraud rather than a means to prevent it. I concur entirely in the reasoning and result reached in the dissenting opinion of Wright, J.

UTTER, J., concurs with FINLEY, J.

Petition for rehearing granted December 26, 1972.