[No. 42255.    En Banc.    June 20, 1974.]

JIM HOUSE, *Petitioner* v. HAROLD ERWIN *et al.,*
*Respondents.*

*Kelly Hancock,* for petitioner.

*John Hancock,* for respondents.

WRIGHT, J.—Plaintiff, a real estate broker, brought this action in the Okanogan County Superior Court to recover a real estate commission from defendants. Plaintiff prevailed in the trial court. The matter was appealed to the Court of Appeals, Division Three, and there the judgment was reversed. *House v. Erwin,* 5 Wn. App. 737, 490 P.2d 883 (1971). Plaintiff petitioned this court to review and his petition was granted.

Because the designations of "appellant" and "respondent" might prove confusing, we shall refer to the parties as "plaintiff" and "defendant."

Plaintiff is a licensed real estate broker with an office in Okanogan county between Okanogan and Omak. On February 24, 1969, the defendants, Harold Erwin and Chris E. Albrecht, signed a document which was intended to be a nonexclusive real estate listing agreement. The defendant, Effie M. Albrecht, wife of Chris E. Albrecht, did not sign the agreement but was present at the signing, at several

conversations, and talked to plaintiff on the telephone on a number of occasions. The trial court found that she ratified the agreement. Such finding was not challenged, and, therefore, is not now before the court.

■ The question of whether the plaintiff was the procuring cause of the sale, likewise, is not before the court. The trial court found, "the plaintiff was the procuring cause of the sale." The Court of Appeals did not consider that matter, saying "it is unnecessary for us to decide whether plaintiff was the procuring cause of the sale." The finding of the trial court was based on substantial evidence and we are firmly committed to the rule that a finding of fact by the trial court will not be disturbed if based on substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959); *Coy v. Raabe*, 77 Wn.2d 322, 462 P.2d 214 (1969); *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972).

The Court of Appeals reversed the trial court on the issue of the sufficiency of the legal description contained in the real estate broker's employment contract, commonly known as a "listing agreement." *House v. Erwin, supra*. That was the only matter relied upon by the Court of Appeals for reversal and it is the only question before this court.

Defendants contend the description is inadequate to comply with RCW 19.36.010. The contract is shown in the accompanying illustration.

The trial court found:

The Court further finds that the said agreement did have attached to it a proper legal description of the real and personal property, and that the plaintiff was authorized under the agreement to attach said description, and he did attach the same in accordance with the authority given him.

■ The finding of the trial court is based on substantial evidence. As stated above we are firmly committed to the rule that a finding of fact of a trial court will not be disturbed if based on substantial evidence. The quoted find-

ing brings this case within the rule permitting the broker to insert a correct legal description when specifically au-

REAL ESTATE BROKER'S EMPLOYMENT CONTRACT

FARM PRO.

LAW PUB. CO.
STEVENS-NESS L
COPYRIGHT
PORTLAND, OREGO

Description: _____ acres, known as _____

describe as _____; for better description sea owner's title deed on record, now made a part hereof. For personal property, if any to be included in property offered for sale at price next mentioned, see below or see signed inventory, to be attached.

County of _____, State of _____, Sec. _____, T. _____, N/S, R. _____, E/W of. _____, M., _____ farm or ranch

Selling price, free of encumbrances: $175,000 _____; Terms.

Is signed inventory attached as part hereof? Yes.____; No.____; to be attached as part hereof? Yes.____; No.____

To _____ Date 2-24 1954

Real Estate Broker                    State

FOR VALUE RECEIVED, you hereby are employed to sell or exchange the property described hereon at the selling price and on the terms noted. You hereby are authorized to accept a deposit on the purchase price. You may, if desired, secure the cooperation of any other broker, or group of brokers, in procuring a sale of said property. In the event that you, or any other brokers cooperating with you, shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept, or that during your employment you place me in contact with a buyer to or through whom at any time within 180 days after the termination of said employment I may sell or convey said property, I hereby agree to pay you in cash for your services a commission equal in amount to _____% of said selling price. I agree to convey said real estate to the purchaser by a good and sufficient deed, to transfer and deliver said personal property, if any, by good and sufficient bill of sale and to furnish either title insurance insuring or a complete abstract showing marketable title to said real estate and good right to convey. I hereby warrant that the Information shown hereon below is true, that I am the owner of said property, that my title thereto is a good and marketable title, that the same is free of encumbrances except as shown hereafter under "Financial Details" and except taxes levied on said property for the current tax year which are to be pro rated between the seller and buyer. In case of an exchange, I have no objection to your representing and accepting compensation from the other party to the exchange as well as myself. I hereby authorize you and your customers to enter any part of said property at any reasonable time to show same. Also, I authorize you, at any time, to fill in and complete all or any part of the "Informative Data" below, except financial details. The following items are to be left upon the premises as part of the property purchased: All irrigation fixtures and heating fixtures and equipment (including stoker and all tanks but excluding fire place fixtures and equipment, water heaters, electric light fixtures, light bulbs and fluorescent lamps, bathroom fixtures, venetian blinds, window and door screens, storm doors and windows, attached linoleum, attached television antenna, all shrubs and trees and all fixtures except _____

The following personal property is also included as a part of the property to be offered for sale for said price: _____

_____ (or see signed inventory, if any, attached). This agreement expires at midnight on _____, 19____ but I further allow you a reasonable time thereafter to close any deal on which earnest money is then deposited. In case of suit or action on this contract, I agree to pay such additional sum as the court may adjudge reasonable as plaintiff's attorney's fees. It is further agreed that if my signature affixed to the renewal clause below shall have the effect of renewing and extending your employment to a new date to be fixed by me on the same terms and will with the same effect as if the said new date had been fixed above as the expiration date of your employment.

~~THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute sole and exclusive right to sell or exchange the said described property in the event of my sale, by me or any other person or of exchange or conveyance of said property or any part thereof, during the term of your exclusive employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission the same as if a sale had actually been consummated by you.~~

I HEREBY CERTIFY THAT I HAVE RECEIVED A CARBON COPY OF THIS CONTRACT.

Accepted _____, 19____

_____ Broker

Owner's Address _____, City _____, State _____

FOR VALUE RECEIVED, the above broker's employment hereby is renewed and extended to and including _____, 19____

Accepted _____, 19____

_____ Broker

_____ (SEAL)
Owner

_____ (SEAL)
Owner

_____ (SEAL)

_____ (SEAL)

thorized to so do. *Edwards v. Meader,* 34 Wn.2d 921, 210 P.2d 1019 (1949); *Noah v. Montford,* 77 Wn.2d 459, 463 P.2d 129 (1969); *McKoin v. Kunes,* 5 Wn. App. 731, 490 P.2d 735 (1971).

The listing agreement was signed February 24, 1969. At that time there was snow on the ground and it was difficult, if not impossible, for plaintiff to adequately view the premises. There had been telephone discussions before that date, but before February 24, 1969, it had not been possible for plaintiff even to get to the dwelling on the property. It was not until April of 1969 that plaintiff could go over the property. In April, Mrs. Albrecht telephoned plaintiff, Jim House, and stated the snow was off the ground and the property dry enough to walk over.

At the time of signing the listing agreement there was considerable discussion of various matters. It was agreed the listing would not be exclusive, which provision was inserted at the insistence of Mr. Erwin. Plaintiff told the defendants he would get the description from the courthouse or from the title company. Plaintiff also informed defendants that a description found on a tax statement often was not an adequate legal description, and carefully inquired if the property was exactly as defendants had purchased it, with nothing added or subtracted.

Defendant Erwin gave a map or maps to plaintiff showing the property, and plaintiff also drew a map to scale from the legal description. The maps were discussed with defendants and there was discussion of whether a tract of land across the road was a part of the subject property. Plaintiff informed defendants the legal description did not include the land across the road.

The map drawn by plaintiff bears a marking "4/69" and the parties placed the time they saw and discussed it as "in the spring of sixty-nine." The ultimate purchasers did not enter into the matter until late in the same year, 1969, some time after September 18, 1969, the date of plaintiff's advertisement in the Washington Farmer which was seen by the

purchasers. The actual contract for sale of the property from defendants to the purchasers was not signed until April 2, 1970.

The facts clearly indicate the correctness of the court's finding of fact quoted above, and that not only was the plaintiff authorized to supply the legal description, but that such description was actually supplied with the knowledge and approval of defendants.

Plaintiff did not claim to have shown the actual written description to defendants, but did show them the map and aerial photographs and fully discussed the property lines with them. He even called defendants' attention to the fact they were putting water on land they did not own.

There is another reason to reverse the decision of the Court of Appeals and reinstate the decision of the trial court. Although there are cases holding a complete legal description is required by RCW 19.36.010, that is clearly not what the statute states. RCW 19.36.010 reads in pertinent part:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.

This statute was enacted for the purpose of preventing fraud. The statute of frauds enacted by the legislature of Washington Territory in 1854, Laws of 1854, § 2, p. 403, did not contain subsection (5) which is involved here. That was added by Laws of 1905, ch. 58, § 1, p. 110.

The purpose of the enactment was well stated by Finley, J., in *Miller v. McCamish*, 78 Wn.2d 821, 828, 479 P.2d 919 (1971), wherein it was said:

> As we have previously noted, there can be little question as to the intent of the legislature in the enactment of

RCW 19.36.010 and RCW 64.04.010. The clear purpose and intent behind these statutes of frauds is the prevention of fraud. To apply these statutes in such a manner as to promote and encourage fraud would be to *defeat the clear and unambiguous intent of the legislature in their enactment.*

Clearly, the fraud sought to be prevented by RCW 19.36.010 (5) relates to disputes as to the amount of commission or compensation, the term of the listing agreement, if exclusive or nonexclusive, and most important, if any agreement existed at all. It seems scarcely conceivable for a dispute to arise over the identity of property listed with a broker.

A better rule was stated in *Pray v. Anthony,* 96 Cal. App. 772, 777, 274 P. 1024 (1929), wherein it was said:

> As uniformly held by numerous decisions in this state upon the subject, the essential part of a contract to employ a real estate broker, so far as the statute of frauds is concerned, is the matter of the employment and consequently need not describe the land specifically, if the terms of the employment can be made definite without it.

An even more interesting case is *Central Idaho Agency, Inc. v. Turner,* 92 Idaho 306, 442 P.2d 442 (1968), which involved a contract on exactly the same printed blank as is involved herein. Idaho, just as Washington, had a long line of cases holding a perfect description of the property was essential to a real estate broker's contract of employment. The Idaho court overruled several cases inconsistent with the *Central Idaho Agency* case, stating at page 311:

> A contract employing a broker to find a purchaser of real property, is not a contract to sell, convey, or encumber real property or any interest therein. It is purely a contract of employment for services to be performed by the broker for a commission to be paid upon the occurrence of certain specified events. Ordinarily such a contract would not support an action to compel conveyance of the property involved. The present action does not seek any such relief. It was brought solely for the recovery of the commission provided for in the agreement. In such a case the description in the agreement is sufficient where it is

shown that there is no misunderstanding between the property owner and the broker as to the property to be offered for sale, and where it is sufficient to enable the broker to locate the property, show it, and point out its boundaries to the prospective purchaser. In this case both plaintiff and defendant knew from the description contained in the agreement that the property to be sold was the entire "Clara Turner farm." The farm was well known in the neighborhood. Its exact acreage and location as to county and section numbers was readily available and could be established by parol or other extrinsic evidence without varying, adding to, or subtracting from the agreement which the parties intended to make. Such evidence would apply the description to the land in harmony with the manifest intention of the parties.

We conclude that the description in the brokerage agreement involved herein was sufficient for the purposes of this action.

A real estate broker's employment contract need not contain a complete legal description of the property being listed in order to satisfy the requirements of the statute of frauds, RCW 19.36.010(5), if the contract is clearly understandable. The language of the statute requires "such agreement, contract or promise, or some note or memorandum thereof, [to] be in writing, . . ." The writing herein satisfied the requirement of the statute. The contrary holding in *Heim v. Faulstich,* 70 Wn.2d 688, 424 P.2d 1012 (1967), *Rogers v. Lippy,* 99 Wash. 312, 169 P. 858 (1918), and other cases to the same effect, is hereby overruled.

In order to avoid any possible misunderstanding, it should be absolutely clear the foregoing relates only to the real estate broker's commission provisions contained in RCW 19.36.010(5) and not with any other requirement of any statute or statutes.

The Court of Appeals is reversed and the judgment of the superior court is reinstated.

FINLEY, HUNTER, UTTER, and BRACHTENBACH, JJ., concur.

FINLEY, J. (concurring)—I have signed and fully concur in the majority opinion by Wright, J., for the reasons therein

stated, as well as for the reasons set out in my dissenting opinion filed when this case was first before this court in *House v. Erwin,* 81 Wn.2d 345, 501 P.2d 1221 (1972).

ROSELLINI, J. (dissenting)—The trial court granted a judgment in favor of the plaintiff. The appellate court reversed the trial court in *House v. Erwin,* 5 Wn. App. 737, 740, 490 P.2d 883 (1971), and recognized that the statute of frauds was an issue to be decided:

> In the instant case we are unable to find any *express* authorization for the agent to attach or write in a legal description. In this respect this case differs from the *McKoin* [*McKoin v. Kunes,* 5 Wn. App. 731, 490 P.2d 735 (1971)] *Noah* [*Noah v. Montford,* 77 Wn.2d 459, 463 P.2d 129 (1969)] and *Meader* [*Edwards v. Meader,* 34 Wn.2d 921, 210 P.2d 1019 (1949)] cases. The trial judge in his oral remarks said that this issue was the "tightest question" he had to decide. He acknowledged the phraseology "legal to be attached" standing alone would not authorize plaintiff to attach the legal description and thereby satisfy the statute of frauds. However, he held the provision "for better description see the owner's title deed on record, now made a part hereof" granted authority to plaintiff to go to the record, secure the description and attach it to the agreement. We are unable to find such *express* authority from these two phrases. Neither does the attempted incorporation by reference of the owner's title deed satisfy the statute. The evidence shows defendants had a deed of record to other property in the county. Oral testimony is required to show that such deed was not the deed referred to in the listing agreement. Moreover, defendants did not have a deed to the farm, but held only a contract interest.

This court, in *House v. Erwin,* 81 Wn.2d 345, 501 P.2d 1221 (1972), affirmed the appellate court. Thereafter, a petition for rehearing was granted and now the court has reversed itself and the appellate court. In doing so, it overrules 60 years of precedent. The majority does not name the cases which they *sub silentio* overrule but leaves this to the laborious task of future researchers.

All this comes about because the personnel of the court

has since changed. A litigant loses or wins not upon the rule of law but upon the fortuitous event of change of personnel.

To best understand the problem, I wish to adopt Justice Neill's opinion in *House v. Erwin, supra,* as I cannot improve upon it:

The Court of Appeals held a real estate broker's employment contract, commonly known as a "listing" agreement, unenforceable by reason of the inadequacy of the real estate description. *House v. Erwin,* 5 Wn. App. 737, 490 P.2d 883 (1971). In reaching that result the Court of Appeals reversed the trial court. We granted review (80 Wn.2d 1004). We reiterate herein only such of the facts as are necessary to frame the issue brought here by the petition for review.

Plaintiff, respondent in the Court of Appeals and petitioner here, is a licensed real estate broker in Okanogan County. On February 24, 1969, defendants Harold Erwin and Chris E. Albrecht signed a listing agreement with plaintiff. The agreement is a standard printed form for farm or ranch property containing blank spaces, including spaces for insertion of the legal description. But for the defendants' signatures, all blanks on the contract were filled in by the plaintiff broker. The property description portion of the listing agreement states:

Description: 534 acres known as Albrecht-Erwin Ranch farm or ranch described as Legal to be attached. Sec........... T........ ...N/S, R............E/W of ...........M., County of Okanogan, State of Wn.; for better description see owner's title deed on record, now made a part hereof.

(Underlined words and figures are the handwritten portion.) In fact, defendants were purchasing the farmlands under a recorded real estate contract; so there was no "title deed" on record. There was a deed on record of other Okanogan County farmlands owned by defendant Erwin.

Under RCW 19.36.010(5) contracts of this nature must be in writing and signed by the party to be charged. There is a split of authority in this country as to the requirement of a

specific legal description of the property which is the subject matter of a real estate broker's commission contract. *See Sufficiency, Under Statute of Frauds, of Description or Designation of Property in Real-Estate Brokerage Contract,* Annot., 30 A.L.R.3d 935 (1970); 12 Am. Jur. 2d *Brokers* § 46 (1964). For nearly 60 years, in an unbroken line of cases, Washington has been aligned with the states applying the stricter rule as to the sufficiency of land description. *E.g., Heim v. Faulstich,* 70 Wn.2d 688, 424 P.2d 1012 (1967); *Leo v. Casselman,* 29 Wn.2d 47, 185 P.2d 107 (1947); *Big Four Land Co. v. Daracunas,* 111 Wash. 224, 190 P. 229 (1920); *Cushing v. Monarch Timber Co.,* 75 Wash. 678, 135 P. 660 (1913). We have relaxed this rule so as to alleviate any practical burden upon real estate brokers by upholding such contracts where the seller has *expressly* authorized the broker to subsequently attach a legally sufficient description to the brokerage contract. *Noah v. Montford,* 77 Wn.2d 459, 463 P.2d 129 (1969); *Edwards v. Meader,* 34 Wn.2d 921, 210 P.2d 1019 (1949).

The main thrust of plaintiff's argument on appeal is that the language of the listing agreement brings the contract within the rule of *Edwards v. Meader, supra.* We are in accord with the holding of the Court of Appeals on this issue. The language of the agreement, unbuttressed by parol evidence, does not constitute express authorization for the agent to procure and attach the complete description of the realty. We adopt the analysis of the Court of Appeals on this point. *House v. Erwin, supra* at 740.

However, although the property description in the listing agreement in the case at bench does not satisfy our established rule, it is suggested that we overturn 6 decades of established precedent, align ourselves with those states taking a contrary view in the mentioned split of authority, and thereby uphold the enforceability of the contract before us.

The judicial process once may have been regarded more as a search for precedent than as a logical, rational development of principles and rules which respond to the needs and mores of a changing society. If stare decisis is imposed

merely out of reverence to the past, it may result in blind adherence to unworkable and harmful precedent or, just as undesirably, serve as a label to camouflage the subjective conclusions of prior judges. So applied, the doctrine has properly been subject to criticism.

But as properly viewed, the doctrine retains vital importance. A basic function of any legal system is to provide rules by which people may guide their conduct in society. To fulfill this purpose, it is essential that the law be reasonably certain, consistent and predictable. In this respect, stare decisis serves an important and valid function. As we observed in *In re Stranger Creek,* 77 Wn.2d 649, 653, 466 P.2d 508 (1970):

> Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also recognize that stability should not be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned.

We have no objection to changing a rule of law provided that, consonant with the above principle, we are convinced that the existing rule is incorrect and harmful and that a less harmful alternative is available. The integrity of the legal system—and the basic function that people rightfully expect it to perform—demand these prerequisites to change. These considerations are especially important in an area such as transactions involving realty, where there is particular reliance on the certainty of the applicable legal rules.

With the foregoing in mind, we consider the suggestion that we overturn our long-standing rule as to the suffi-

ciency of subject matter description in real estate broker's employment contracts.

We see no harm or undue inconvenience in the existing rule. In cases involving real estate brokers' contracts, we are not dealing with an unsophisticated or overreached party. Brokers in this state must be licensed after successfully taking a comprehensive real estate brokers' examination.

The rule in this state regarding the sufficiency of the description of the real estate in a broker's contract has been firmly established for several decades, and is well known by every licensed broker. In practically all cases, the brokers prepare the commission contract. If the detailed legal description is not available at the time of the execution of the contract, the broker may provide in the agreement for its subsequent attachment—a simple matter. *See Noah v. Montford, supra.* In our view, a less stringent rule would open the door to uncertainty, ambiguity and disputes in an area of endeavor where definiteness is of particular importance, thereby contradicting the purpose for which section 5 was added to our statute of frauds. Laws of 1905, ch. 58, § 1, p. 110; RCW 19.36.010 (5).

The Court of Appeals reached the correct result herein, following long established and relied upon precedent. We are not convinced that the existing rule is incorrect and harmful. Accordingly, the judgment of the trial court should be reversed.

HALE, C.J., and HAMILTON and STAFFORD, JJ., concur with ROSELLINI, J.