116

[No. 45471-4-I.   Division One.   March 5, 2001.]

ROY E. BISHOP, ET AL., *Respondents*, v. JAMES J. HANSEN, ET AL., *Appellants*.

*James J. Jameson* (of *Ries & Jameson*), for appellants.
*Jonathan S. Smith*, for respondents.

BECKER, A.C.J. — To satisfy the statute of frauds for a real estate brokerage agreement, the written agreement must specify how the broker is to be paid. If the broker is to receive a commission based on the sales price of the property, the listing price is not a necessary term and its absence will not invalidate the agreement.

Appellants Elsie and James Hansen entered into an exclusive real estate listing agreement with Roy Bishop, a real estate broker. The listing agreement, written on a form contract, stated that Bishop would have the "sole and exclusive right" to submit offers to purchase the Hansen home until June 30, 1998. The commission was six percent of the sales price of the home upon sale. The agreement did not state the sale or listing price, or the date of the agreement.

The parties orally agreed at signing that Bishop would

not immediately list the property for sale on the multiple listing service system because the house needed some repair work, which Bishop agreed to perform. On February 13, 1998, the parties signed a written agreement for Bishop's repair work. The agreement stated that the Hansens would list the home "as per the written contract dated January 19, 1998," as soon as the work was completed and the house was ready to show.

Bishop completed his repair work on February 19. That same day, the Hansens, who had become dissatisfied with Bishop's performance, relisted their property with John L. Scott Realty. The next day, when Bishop attempted to list the property on the multiple listing system on February 20, he discovered the John L. Scott listing. The Hansen property sold through John L. Scott a few days later.

Bishop filed suit against the Hansens for breach of contract, seeking recovery of his six percent commission under the exclusive listing agreement. The Hansens answered by denying the existence of a valid listing agreement with Bishop. They asserted counterclaims pertaining to a lien Bishop had imposed on the property. The trial court granted partial summary judgment to Bishop on his contract claim, but denied summary judgment with respect to some of the Hansens' counterclaims. The parties later stipulated to dismissal of the Hansens' remaining counterclaims and entry of a final judgment against the Hansens in the amount of $14,807 for damages, attorney fees, and interest. The Hansens appeal from the order granting Bishop summary judgment on the basis that the listing agreement was invalid under the statute of frauds.

A court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). The appellate court considers the facts and all reasonable inferences from those facts in the

light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## STIPULATION

As a threshold matter, realtor Bishop claims that the stipulation for entry of judgment agreed to by the Hansens estops them from appealing because it settled all of the parties' claims. The stipulation recites:

> In light of the Court's Order on Summary Judgment dated September 9, 1999, it is stipulated and agreed as follows:
>
> 1. All remaining counter-claims of Defendant shall be dismissed with prejudice and without cost; and
>
> 2. Plaintiff shall have a judgment against Defendants in the amount of $14,807.71 . . . .

■ It is well established that a party may not appeal an order of summary judgment until the order has been entered as a final judgment. *See Maybury v. City of Seattle*, 53 Wn.2d 716, 718-19, 336 P.2d 878 (1959); *Hontz v. White*, 56 Wn.2d 538, 539-40, 348 P.2d 420 (1960). The Hansens could not have appealed the damage award against them until all the issues in the lawsuit had been resolved in a final judgment. They facilitated an immediate appeal without proceeding to trial by stipulating to the dismissal of their counterclaims and allowing a final judgment to be entered against them.

Bishop contends the stipulation was the result of a negotiated settlement, intended to end further litigation. But the record contains no settlement agreement. The judgment does not dismiss Bishop's contract claim for the brokerage commission. There is no evidence that the stipulation was anything but a mechanism to obtain a judgment that was final, and thus appealable. Bishop has cited no authority for the proposition that a stipulation to judgment, without more, shuts off the losing party's right to appeal. We conclude the Hansens' appeal is properly before us.

## STATUTE OF FRAUDS

In their appeal, the Hansens contend the listing agreement violated the statute of frauds because it did not state the listing price and did not bear a date.

Washington's statute of frauds requires that all real estate brokerage agreements be in writing and signed by the party to be bound:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.

RCW 19.36.010.

■ ■ The fraud sought to be prevented by RCW 19.36.010(5) "relates to disputes as to the amount of commission or compensation, the term of the listing agreement, if exclusive or nonexclusive, and most important, if any agreement existed at all." *House v. Erwin*, 83 Wn.2d 898, 904, 524 P.2d 911 (1974). Essential to any writing meeting the terms of the statute as it relates to real estate brokerage agreements is a description of "the parties, the employment, the description of the real estate and *the agreement to pay the commission* . . . ." *Cushing v. Monarch Timber Co.*, 75 Wash. 678, 685, 135 P. 660 (1913) (emphasis added).

■ ■ In *House*, the Court characterized a brokerage agreement as an employment contract, "for services to be performed by the broker for a commission to be paid upon the occurrence of certain specified events." *House*, 83 Wn.2d at 904 (citing *Cent. Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968)). Because a brokerage commission agreement is not an agreement to sell or convey real estate, a complete legal description of the listed property is not necessary to satisfy the statute of frauds. *House*, 83 Wn.2d at 905. Similarly, there is no reason why the listing price

should be an essential term of a listing. Our Supreme Court held in 1930 that a brokerage agreement without a stated sales price did not violate the statute of frauds because it described the property to be sold and established a commission. *Bethel v. Preston*, 157 Wash. 652, 655-56, 290 P. 224 (1930).

The parties agreed that Bishop would be the exclusive listing agent of the Hansens until June 30, 1998. The agreed commission was to be based on the price for which the property eventually sold. Neither the commission nor any other term of employment was made dependent on the listing price. The events that would cause the Hansens to owe a commission are clear from the contract, the agreement adequately describes the property, and the existence of an agreement between the parties is not open to question. Therefore, it is immaterial that the agreement does not specify a listing price.

Also immaterial is the absence of a date showing when the parties entered into the agreement. No matter when they signed it, the agreement granted Bishop the exclusive right to list the property until June 30, 1998.

Our ruling that the listing agreement is enforceable means, as the Hansens have acknowledged it would, that Bishop is contractually entitled to fees on appeal as the result of the provision in the listing agreement for prevailing party attorney fees. We do not consider Bishop's additional argument, under RAP 18.9, that attorney fees should be awarded because the appeal is frivolous.

Affirmed.

COLEMAN, J., concurs.

APPELWICK, J. (concurring) — I concur in the analysis by the majority on the statue of frauds issue and would affirm. However, on the issue of the stipulation, I depart from the stated analysis.

The dispute on appeal is whether the parties' stipulation to dismiss the Hansens' remaining counterclaims and

award damages to Bishop also bars appellate review of the Hansens' statute of frauds claim.

The majority asserts that the "record contains no settlement agreement," and there is no "evidence that the stipulation was anything but a mechanism to obtain a judgment that was final, and thus appealable." Majority at 119. The implication of these statements is that settlement agreements must be called "settlement agreements" rather than "stipulations," and that agreements must resolve all issues in order to be "settlement agreements." I cannot accept such an inference.

The stipulation is unquestionably an agreement and it is *in the record* on appeal. The stipulation clearly resolves the counterclaims by the Hansens and establishes a judgment amount based upon the grant of summary judgment. This much is undisputed. The Hansens assert the stipulation was to facilitate appeal of the summary judgment. Bishop asserts the stipulation was intended to dispose of all claims and foreclose appeal. A stipulation may properly be used to accomplish what each party alleges occurred. Whether this stipulation precludes appeal is for this court to decide.

We know that the parties made no motion pursuant to CR 54(b) or RAP 6.2 for discretionary appellate review. Absent such a motion being granted, a final order was necessary prior to an appeal of the summary judgment issues. *Maybury v. City of Seattle*, 53 Wn.2d 716, 336 P.2d 878 (1959).

The stipulation, order and judgment entered by the trial court on September 27, 1997, was a final order. The question before us is to determine the legal effect of the stipulation and order.

" '[I]t is the duty of the court to declare the meaning of what is written, and not what was intended to be written.' " *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 571, 919 P.2d 594 (1996) (quoting *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990)). If the language is clear and unambiguous, the court must enforce the contract as written. *McDonald v. State Farm Fire & Cas. Co.*, 119

Wn.2d 724, 733, 837 P.2d 1000 (1992). It may not modify the contract or create ambiguity where none exists. *McDonald*, 119 Wn.2d at 733.

The language of the stipulation is clear. Following the words "stipulated and agreed as follows" are only provisions which dismiss the Hansens' counterclaims and establish a dollar amount for the judgment. No language indicates an agreed change or compromise on the issue of liability decided in the summary judgment. No language indicates an agreement to extinguish a right of appeal.

The express language, therefore, does not support Bishop's position that the parties intended to extinguish a right to appeal. The language is not ambiguous. Therefore, we will not consider extrinsic evidence to prove intent. The legal effect of the stipulation, order and judgment, and a final judgment, made the summary judgment ripe for appeal. If the parties intended for something different, their words failed to clearly state it.

I agree with the majority that the Hansens' statute of frauds issue is properly before us.