[No. 53334–2.   En Banc.   August 27, 1987.]

*In the Matter of the Personal Restraint of*
TERRY EUGENE MERCER, *Respondent,* THE
STATE OF WASHINGTON, *Petitioner.*

Norm Maleng, Prosecuting Attorney, and Deborah J. Phillips, Senior Appellate Attorney, for petitioner.

Dennis Benjamin of Washington Appellate Defender Association, for respondent.

GOODLOE, J.—By unpublished opinion the Court of Appeals granted the personal restraint petition filed by petitioner Terry Eugene Mercer. The petition alleged it was constitutional error not to have instructed the jury the State must prove the absence of excuse because sufficient facts had been presented to put the issue before the jury and that Mercer was actually and substantially prejudiced by the jury not being so instructed. We reverse.

On the afternoon of January 20, 1981, Kristal Mercer died following a massive blow which lacerated her liver. She was only 5 months old. She had been left alone that day in care of Mercer.

At his trial, Mercer claimed he accidentally inflicted the fatal injuries sustained by his daughter while administering cardiopulmonary resuscitation (CPR). He alleged Kristal had been coughing and choking that morning and he had attempted to dislodge something from her throat. He testified that when she later stopped breathing he attempted CPR, which amounted to pushing vigorously on Kristal's chest. Mercer claimed he attempted CPR shortly before an

aid unit was called. The aid unit arrived at approximately 1:45 p.m. Mercer's neighbor, Paulette Johnston, testified that at some time between 11 a.m. and 12:30 p.m. on the day of Kristal's death, Mercer had come over and told her Kristal had stopped breathing and that he had punched her in the chest to make her start breathing again. Mercer denied having made this statement to Johnston.

Dr. John Eisele of the King County Medical Examiner's Office performed an autopsy. He determined Kristal had died from loss of blood caused by lacerations of the liver. Dr. Eisele testified that the liver was damaged by a blow to the abdomen with "a great deal of force". Report of Proceedings, at 314. In his opinion, the extent of the injury to the liver compared to the type seen in a person who falls several stories or in a child injured in a high speed automobile accident. Dr. Eisele estimated the damage to Kristal's liver was caused approximately 2 to 6 hours before her death. He placed the time of her death at no later than 2:17 p.m., but believed it had probably occurred earlier.

Dr. Eisele also discovered that four of Kristal's ribs had been fractured between 2 and 8 weeks before her death. He testified that there was no possibility that these fractures were sustained on the day of death. He further testified the fractures sustained by Kristal were unusual because it takes a great deal of force to fracture an infant's ribs which are fairly flexible. Dr. Eisele did not recall ever having seen a child of Kristal's age with fractured ribs. From the location of Kristal's fractures he determined that someone must have held her from both sides of the rib cage on the sides of the body and squeezed until the ribs broke. Dr. Eisele further found a number of bruises on Kristal's body—the bruises found on her face being several days older than the ones found on her body and legs.

Following the autopsy the King County Prosecuting Attorney charged Mercer with second degree murder alleging that Mercer caused Kristal's death in the course of committing second degree assault. The trial court instructed the jury on the defense of accident or mistake, but

gave no specific instruction as to the burden of proof on that defense. Instruction 3 provided:

A person commits the crime of murder in the second degree when he or she commits assault in the second degree and in the course of and in the furtherance of such crime, he or she causes the death of a person other than one of the participants in the crime unless the killing is excusable as defined elsewhere in these instructions.

Clerk's Papers, at 12. Instruction 15, proposed by the defense, provided:

It is a defense to a charge of murder in the second degree or manslaughter in the first degree or manslaughter in the second degree that the homicide was excusable as defined in this instruction.

Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent.

Clerk's Papers, at 24.5. Furthermore, the trial court instructed the jury that the State "has the burden of proving each element of the crime beyond a reasonable doubt" and that "[a] defendant is presumed innocent". Instruction 2; Clerk's Papers, at 11. In closing argument the prosecutor twice told the jury Mercer had no duty to prove anything.

The jury rejected Mercer's claim of accident and found him guilty of second degree murder. The Court of Appeals affirmed by unpublished opinion. Thereafter, we filed *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983), holding that it is error of constitutional proportion for a jury to be instructed that the defendant has the burden of proving self–defense. *McCullum,* at 497. The Court of Appeals subsequently filed a revised opinion again affirming Mercer's conviction. *State v. Mercer,* 34 Wn. App. 654, 663 P.2d 857 (1983). The court read *McCullum* to apply to Mercer's accident claim but concluded that *McCullum* only required that future juries should be instructed the State must prove the absence of excuse or justification. *Mercer,* at 659–60.

Thereafter, *State v. Acosta,* 101 Wn.2d 612, 621, 683 P.2d 1069 (1984) held that the jury should be informed in

some unambiguous way that the State must prove the absence of self–defense beyond a reasonable doubt. After the *Acosta* decision, Mercer filed a personal restraint petition with the Court of Appeals alleging that he is unlawfully restrained. Mercer seems to argue that the analysis of *McCullum* in *Mercer* is inconsistent with the reasoning of *Acosta.* In a split decision the court granted Mercer's petition. The court, citing *Acosta,* held that it was constitutional error not to have instructed the jury that the State must prove the absence of excuse, *see* RCW 9A.16.030, and reasoned that more likely than not, the defendant was actually and substantially prejudiced by the jury not being so instructed. *See In re Haverty,* 101 Wn.2d 498, 504, 681 P.2d 835 (1984).

The State seeks review. The State concedes that it had the burden to prove lack of excuse because excuse negates the requisite element of knowledge. *State v. Fondren,* 41 Wn. App. 17, 21–22, 701 P.2d 810 (1985); *see also Acosta,* at 619–20. In the petition for review, the State did not challenge the Court of Appeals ruling that there was constitutional error; therefore, we will assume that there was constitutional error. *See* RAP 13.7(b).

## I

In our prior decisions we have held that on collateral review the burden is on the petitioner to show that any constitutional error was prejudicial. *In re Hews,* 99 Wn.2d 80, 89, 660 P.2d 263 (1983); *In re Hagler,* 97 Wn.2d 818, 826, 650 P.2d 1103 (1982); *State v. Johnson,* 46 Wn. App. 302, 306, 730 P.2d 703 (1986). Recently, in *Haverty* we stated:

> Before this court grants a personal restraint petition, the petitioner must prove that the constitutional errors worked to his "actual and substantial prejudice." *In re Lile,* 100 Wn.2d 224, 225, 668 P.2d 581 (1983); *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982). . . . [The inquiry is] whether petitioner is able to show that, more likely than not, he was actually and substantially prejudiced by the instructions. *Hagler,* 97 Wn.2d at 826.

(Citations omitted.) *Haverty,* at 504.

The United States Supreme Court subsequently addressed the issue of harmless instructional error in *Rose v. Clark,* ___ U.S. ___, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986). *Rose,* however, involved a federal habeas corpus proceeding. The *Rose* Court held that review of the whole record was required to determine whether the error was harmless beyond a reasonable doubt. *Rose,* 92 L. Ed. 2d at 469.

> Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware* v. *Van Arsdall,* 475 U. S., at ___ [89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986)].

(Citation omitted.) *Rose,* 92 L. Ed. 2d at 471.

The State appears to argue that constitutional error analysis in state personal restraint petition proceedings conflicts with the analysis found in *Rose.* Therefore, we address whether constitutional error analysis in state personal restraint petition proceedings needs to be brought in line with the holding in *Rose.*

■■ We decline to adopt the standard articulated in *Rose.* The standard put forth in *Rose* is not new. Twenty years ago the Supreme Court in *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967), stated:

> [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

The *Chapman* Court emphasized that the application of a state harmless error rule is a state question where the alleged error involves state procedure or state law. *Chapman,* at 21. Therefore, we are not required to apply a federal harmless error rule in a state personal restraint petition proceeding. Furthermore, if the State's argument is that *Rose* should be applied because *Rose* requires the whole record be reviewed, we note that review of a personal

restraint petition requires an evaluation of the totality of circumstances including the weight of evidence of guilt, which necessarily involves review of the whole record. *See In re Music,* 104 Wn.2d 189, 191, 704 P.2d 144 (1985); *In re Gunter,* 102 Wn.2d 769, 774, 689 P.2d 1074 (1984). This is consistent with *Rose.*

Personal restraint petitions are not a substitute for appeal. *Haverty,* at 504. As stated in *Hagler,* at 824:

> It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.

(quoting *United States v. Addonizio,* 442 U.S. 178, 184, 60 L. Ed. 2d 805, 99 S. Ct. 2235 (1979)). These well known reasons include: "Collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." *Hagler,* at 824; *see also Engle v. Isaac,* 456 U.S. 107, 127–28, 71 L. Ed. 2d 783, 102 S. Ct. 1558 (1982).

Additionally, the doctrine of stare decisis dictates that we not adopt a new constitutional error rule in personal restraint petition proceedings. *House v. Erwin,* 81 Wn.2d 345, 348, 501 P.2d 1221 (1972), *rev'd on rehearing,* 83 Wn.2d 898, 524 P.2d 911 (1974), provides:

> A basic function of any legal system is to provide rules by which people may guide their conduct in society. To fulfill this purpose, it is essential that the law be reasonably certain, consistent and predictable. In this respect, stare decisis serves an important and valid function. As we observed in *In re Stranger Creek,* 77 Wn.2d 649, 653, 466 P.2d 508 (1970):
>
>> Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also

recognize that stability should not be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned.

This court adopted the "actual and substantial prejudice" rule only 5 years ago in *Hagler*. There has been no showing that this rule is incorrect and harmful. In fact, to change the recently articulated rule would needlessly confuse a settled area of law.

In conclusion, we adhere to the standard established in *Hagler*: A petitioner must prove that the constitutional errors worked to his or her actual and substantial prejudice before the personal restraint petition will be granted.

## II

We now address whether Mercer has proven that the constitutional error worked to his actual and substantial prejudice.

Mercer does not contend that he did not cause his daughter's death. He argues that because he offered testimony as to the possibility that Kristal could have been accidentally killed through the improper application of CPR, the question of excuse was crucial to the jury's deliberations. Mercer argues that, based on the instructions given at the trial and those not given, the jury could have easily been misled as to the respective burdens of the parties. Mercer alleges prejudice lies in the particular facts of this case because the instruction given as to the defense of excuse or justification, instruction 15, could have been easily misunderstood by the jury to place an affirmative burden of proof upon him. He argues these factors could have led a juror to expect considerably more from the defense, in terms of proof, than required. Therefore, Mercer argues he has shown actual and substantial prejudice from the instructional error and urges this court to affirm the Court

of Appeals grant of his personal restraint petition.

The State argues that the medical testimony clearly shows that the constitutional error was harmless beyond a reasonable doubt and that Mercer was not actually and substantially prejudiced by the instructional error. The State asserts Dr. Eisele's testimony proves Mercer's CPR claim was not credible. The State further argues no evidence supports Mercer's version of the injuries and his explanations were shown to be implausible.

We find that Mercer's conviction is supported by overwhelming evidence. Dr. Eisele's testimony demonstrates that the injuries suffered by Kristal are incompatible with a claim of improper application of CPR. His testimony contradicts Mercer's testimony that CPR was performed shortly before the aid unit arrived. Mercer's testimony was shown not to be credible. Mercer claims the injuries occurred when CPR was applied shortly before the aid car arrived at approximately 1:45 p.m.; however, the medical testimony and that of Paulette Johnston necessarily leads to the conclusion that at some earlier time in the day Mercer struck Kristal in the stomach with a massive blow.

Furthermore, this case differs from *In re Lile*, 100 Wn.2d 224, 229, 668 P.2d 581 (1983), wherein the evidence of justifiable homicide was held "contradictory and inconclusive." In *Lile* a burden of proof instruction as to self–defense was vital given that the evidence was "far from overwhelming." *Lile*, at 229. Here, by contrast, a proper burden of proof instruction as to excuse or justification arguably cannot fairly be characterized as vital to Mercer's defense given the overwhelming evidence against him and the implausibility of his accident claim.

Additionally, of importance is that this case does not involve an affirmative misstatement of the law. The instructions did not expressly place the burden of proving excuse on Mercer. *See State v. Mines*, 35 Wn. App. 932, 944, 671 P.2d 273 (1983). This is in contrast to *McCullum* wherein the jury was affirmatively told the burden of proof rested with the defendant regarding self–defense. *McCul-*

*lum,* at 496. Further, we note that defense counsel proposed the language found in instruction 15 which Mercer claims may have confused the jury. *See In re Griffith,* 102 Wn.2d 100, 102, 683 P.2d 194 (1984); *State v. Bockman,* 37 Wn. App. 474, 492, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984). Finally, the prosecution in closing argument informed the jury that Mercer did not have to prove anything.

In light of the overwhelming evidence of guilt, the instructions given and the arguments of counsel, we find that Mercer has not shown actual and substantial prejudice from the instructional error. We reverse the Court of Appeals which granted Mercer's personal restraint petition. Accordingly, we also deny the motion for release filed by Mercer.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.