230 P.3d 237 (2010)
STATE of Washington, Respondent,
v.
Wade William PIERCE, Appellant.
In re Personal Restraint Petition of Wade William Pierce, Petitioner.
Nos. 38377-2-II, 38373-0-II.
Court of Appeals of Washington, Division 2.
April 27, 2010.
*239 John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Lance M. Hester, Attorney at Law, Tacoma, WA, for Petitioner.
Lori Ellen Smith, Lewis Co. Prosecuting Atty. Office, Chehalis, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Wade William Pierce appeals Lewis County Superior Court's denial of his motion for post-judgment relief under CrR 7.8. In addition, he contends that the trial court violated his constitutional rights against double jeopardy when it imposed firearm enhancements where the use of a weapon is an element of the underlying crime. In a statement of additional grounds (SAG),[1] Pierce contends that he was denied his constitutional right to effective counsel and he was denied a fair trial due to prosecutorial misconduct. In addition, Pierce raises several issues in his consolidated personal restraint petition (PRP),[2] including a contention that the trial court erred by imposing firearm enhancements rather than deadly weapon enhancements. We hold that the trial court properly denied Pierce's motion for a new trial. But we further hold that the trial court erred when it imposed firearm enhancements on his convictions because there is insufficient evidence to establish that Pierce was armed with an operable *240 firearm during the commission of the crimes. Finally, in the unpublished portion of this opinion, we hold that Pierce's remaining contentions have no merit. Accordingly, we affirm, grant in part, deny in part, and remand to the trial court for resentencing without firearm enhancements findings, which rest on insufficient evidence.

FACTS[3]
¶ 2 On December 31, 2003, an intruder awoke Jerry and Rosita Coble by shining a flashlight on them in their bed. The intruder was holding what appeared to be a handgun. The Cobles covered their heads as directed while the intruder ransacked and robbed their home. Both Jerry and Rosita[4] believed they saw a second person in the living room during the invasion.
¶ 3 Once the intruders left, Rosita looked outside and saw what she believed to be a small, black, two-door car leaving the driveway. She later saw a similar car at the police evidence garage and learned that it belonged to Pierce.
¶ 4 Police investigators photographed shoe prints found in snow outside the Cobles' home. The investigators noted that the tire tracks in the driveway appeared to have been made by "mud-and-snow type tire[s]." Clerk's Papers (CP) (No. 38377-2-II) at 308. They were unable to recover any usable fingerprints from the Coble home. Later, the Cobles reported that the bandits stole cash, electronics, jewelry, a jewelry box, luggage, a videocassette recorder (VCR) and satellite receiver, and other personal items from their home.
¶ 5 On February 7, 2004, Jack Cartwright saw Pierce briefly at a local tavern. Pierce left shortly after a brief interaction with Cartwright's companion, Norma Woodard. When Cartwright returned home that evening, he discovered that someone had broken into his house and stolen six guns, along with items belonging to his daughter. Police investigators were unable to recover any usable fingerprints from Cartwright's home, but they did find two very distinct sets of footprints. They also photographed tire tracks in Cartwright's driveway.
¶ 6 Lewis County Sheriff's Detective Bruce Kimsey began investigating Pierce as a suspect in the Coble and Cartwright break-ins after receiving a Crime Stoppers' tip. He contacted Pierce at his residence on March 25, and asked some questions about the burglaries. Pierce's mother, Wanita Hidalgo, overheard part of the questioning.
¶ 7 Hidalgo testified that Pierce lived next to her until his ex-wife evicted him in April 2004. Pierce's ex-wife then informed Hidalgo that all of Pierce's things must be removed from the house. Hidalgo, her husband, and a few other people removed things from the house and brought them over to Hidalgo's residence. Hidalgo said it was "[e]verbody's stuff. He had people renting rooms there. There was all kinds of stuff." CP (No. 38377-2-II) at 309.
¶ 8 Pierce always had access to Hidalgo's garage, and he stored some things there. Hidalgo came to suspect that some of the items in her house were stolen. On April 19, Hidalgo called the sheriff. With Hidalgo's written consent, Detective Kimsey searched her property. In Hidalgo's spare bedroom and in the garage, Kimsey found items taken from Cartwright and the Cobles, including Cartwright's shotgun. The police recovered other guns from Hidalgo's house, but other than the shotgun, they were not able to identify them as Cartwright's.
¶ 9 The following day, Hidalgo called 911 because she believed Pierce was on her property. She thought she saw him drive his car behind her house. Detective Kimsey and Inspector Smith went to Hidalgo's property. Smith contacted Pierce and interviewed him. When Kimsey arrived, he interviewed Pierce in the back of his police car. The officers arrested Pierce. The officers were unable to locate Hidalgo on the property that day. *241 Kimsey secured the property, including the back of the house. He spotted Pierce's black Ford Probe and, through the window, he saw a suitcase that appeared to be luggage stolen in one of the burglaries. Kimsey impounded the car and later obtained a warrant to search it and the containers found therein.
¶ 10 Inside the car, they found more items stolen from the Cobles. Zipped inside the passenger seat, they found a .22 Ruger pistol and a magazine with multiple bullets. They also found about 90 grams of methamphetamine, a scale, a syringe, and about a dozen small plastic bindles. They found a set of work boots with tread matching the tread pattern of one of the sets of footprints outside the Coble house. When Detective Kimsey went to Pierce's house, he saw a set of tires with tread that appeared to match the tracks in the Cobles' driveway.
¶ 11 In a later interview, Pierce told Detective Kimsey that he had seen the shotgun under Cartwright's bed when Woodard had previously given him a tour of Cartwright's house. Pierce also said that he had seen Cartwright's firearms during this tour and that was why his fingerprints would be on Cartwright's guns. The police never recovered fingerprints from the guns. The guns they found at Hidalgo's house turned out not to belong to Cartwright.

PROCEDURE
¶ 12 The State charged Pierce with first degree burglary of the Cartwright residence (count I), theft of five firearms taken from Cartwright (counts II-VI), and possession of a stolen firearm (count VII). For the Cobles incident, the State charged Pierce with first degree robbery (count VIII), first degree burglary (count IX), two counts of second degree assault (counts X and XI), and first degree theft (count XII). Finally, the State charged Pierce with unlawful possession of a controlled substance with intent to deliver (count XIII).
¶ 13 In a pretrial motion, Pierce moved to suppress all evidence discovered on April 21, 2004. Following briefing and argument by both parties, the trial court denied Pierce's motion. It ruled that the officers were legally on Hidalgo's property under the "community safety exception." CP (No. 38373-0-II) at 15-16.
¶ 14 After trial, the jury convicted Pierce on all counts. The special verdict forms asked the jury whether Pierce was "armed with, or in possession of a firearm at the time of the commission of the crime." CP (No. 38373-0-II) at 19, 21, 23, 25, 27, 29, 37. By these special verdicts, the jury found that Pierce was armed with a firearm during the burglaries (counts I and VIII), during the possession of a controlled substance (count XIII), and during the first degree robbery (count IX), two counts of second degree assault (counts X and XI), and first degree theft (count XII).
¶ 15 Pierce appealed. We considered Pierce's contentions that (1) the information was deficient, (2) the evidence was insufficient for many of the counts,[5] (3) he was denied the right to a unanimous jury verdict on the burglary and assault charges because the evidence was insufficient to support one or more of the alternative means of committing those offenses, (4) the jury instruction defining knowledge was improper, (5) the trial court improperly calculated his offender score, and (6) the firearm enhancement was improper. In an unpublished opinion filed on October 10, 2006, we affirmed all of Pierce's convictions except the stolen firearm conviction, which we reversed because the information on that charge was deficient. We remanded Pierce's case for resentencing with instructions to vacate and dismiss without prejudice the possession of a stolen firearm charge. We issued our mandate terminating review on October 11, 2007.
¶ 16 On May 14, 2008, Pierce filed a motion for post-trial relief under CrR 7.5, contending *242 that newly discovered 911 call evidence warranted a new trial. In a later reply brief filed on June 11, 2008, Pierce amended his motion for new trial and argued that he was entitled to post-trial relief under CrR 7.8 based on the same newly discovered 911 call evidence. On August 8, 2008, after briefing and argument, the trial court denied his motion for a new trial.
¶ 17 The trial court resentenced Pierce on September 12, 2008. At the sentencing hearing, Pierce raised various issues regarding the firearm enhancements and merger of his two second degree assault convictions into the first degree robbery conviction. Specifically, his counsel stated:
For the Coble matter, our request is that under the Taylor[6] and Freeman[7] cases to merge into two offenses rather than three. We believe we can do nothing about there being two assaults and it cannot therefore get merged down to one, believe me, I've tried to find any authority possible there.... Robbery in this case is by being armed with a firearm. And the Assault II, both the Assault II's in this case, were assaulted another with a deadly weapon. So because we're talking about a deadly weapon, firearm in both those matters, it just seems to fit the facts of the case, your Honor, that the assault was committed in furtherance of the robbery.
Report of Proceedings (RP) (Sept. 12, 2008) at 3-4.
¶ 18 The trial court granted Pierce's motion to merge one conviction for second degree assault into his first degree robbery conviction. It then resentenced Pierce, excluding the possession of a stolen firearm charge (count VII) and one of the second degree assault charges (count XI). Pierce's resentencing resulted in 150 months confinement for the standard range plus 252 months confinement for the firearm enhancements, for a total of 402 months confinement.
¶ 19 Pierce appeals. In his direct appeal, he argues that the trial court erred when it denied his motion for a new trial based on newly discovered evidence under CrR 7.8. He further argues that his firearm enhancements violate his constitutional right against double jeopardy where the use of a weapon is an element of the underlying crimes. Pierce also raises several issues in a SAG, including ineffective assistance of counsel and prosecutorial misconduct. Finally, in addition to his direct appeal, Pierce filed a PRP, in which he raises a multitude of issues. We consolidated Pierce's direct appeal and PRP for review.

ANALYSIS[8]

MOTION FOR NEW TRIAL
¶ 20 In his direct appeal, Pierce contends that the trial court erred when it denied his motion for relief from judgment under CrR 7.8.[9] We disagree.
¶ 21 We review a CrR 7.8 ruling for an abuse of discretion, and we will not reverse a denial absent an abuse of discretion. State v. Swan, 114 Wash.2d 613, 642, 790 P.2d 610 (1990), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). A trial court abuses its discretion when it bases its decisions on untenable or unreasonable grounds. State v. Partee, 141 Wash.App. 355, 361, 170 P.3d 60 (2007).
¶ 22 A trial court will not grant a new trial on the basis of newly discovered evidence unless the moving party demonstrates that the evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." State v. Williams, 96 Wash.2d 215, 223, 634 P.2d 868 (1981) (alteration in original). The absence of any one of these factors is grounds to deny a new trial. Williams, 96 Wash.2d at 223, *243 634 P.2d 868. Here, Pierce fails to meet his burden.
¶ 23 Relying on State v. Slanaker, 58 Wash.App. 161, 791 P.2d 575, review denied, 115 Wash.2d 1031, 803 P.2d 324 (1990), Pierce argues that the 911 call documents qualify as newly discovered evidence which by due diligence could not have been discovered before trial. But Slanaker is easily distinguished.
¶ 24 In Slanaker, the defendant and his roommate testified to the defendant's alibi at trial. 58 Wash.App. at 162-63, 791 P.2d 575. The State impeached their testimony by arguing from evidence that both men had motive to lie. Slanaker, 58 Wash.App. at 163, 791 P.2d 575. The defendant knew that two other witnesses could corroborate his alibi, but he could not locate those two witnesses before trial. Slanaker, 58 Wash.App. at 163, 791 P.2d 575. He was, however, able to locate the two witnesses after trial and moved for a new trial on newly discovered evidence grounds. Slanaker, 58 Wash.App. at 163, 791 P.2d 575. The trial court granted Slanaker's motion. Slanaker, 58 Wash.App. at 163, 791 P.2d 575.
¶ 25 Division One of this court affirmed. Slanaker, 58 Wash.App. at 162, 791 P.2d 575. It determined that, based on the record, there was no likelihood that the two newly discovered witnesses could have been found before trial with due diligence. Slanaker, 58 Wash.App. at 165, 791 P.2d 575. Further, it determined that the newly discovered witnesses' alleged impartial alibi testimony could be extremely significant in light of the State's impeachment of Slanaker's and his roommate's testimony. Slanaker, 58 Wash. App. at 168, 791 P.2d 575. Accordingly, Division One held that the trial court did not abuse its discretion when it granted Slanaker's motion for a new trial. Slanaker, 58 Wash.App. at 168-69, 791 P.2d 575.
¶ 26 Contrary to the facts of Slanaker, the record here suggests that Pierce could have reasonably discovered the 911 call documentation before trial had he exercised due diligence. But even if Pierce could establish that he could not have reasonably discovered the 911 call documentation by due diligence before trial, he has not established that the evidence would likely change the trial result, is material, and is not merely cumulative or impeaching. See Williams, 96 Wash.2d at 223, 634 P.2d 868.
¶ 27 First, it is unlikely that admission of the 911 call documentation-would have changed the outcome of the trial. See Williams, 96 Wash.2d at 223, 634 P.2d 868. Pierce argues that the 911 call documentation would prove that the police officers were not acting under the community caretaking exception to the warrant requirement. But the 911 call documentation does not establish that the detectives were informed of or knew that Hidalgo was at some other place during the events in question. As the trial court stated, "[t]here is no showing that the whereabouts of Ms. Hidalgo were relayed to the detectives, and without that, it is irrelevant whether the dispatch center knew where she was or that it was a different location or that it was a markedly different location or that she hadn't returned to that particular spot." RP (Aug. 8, 2008) at 34-35.
¶ 28 Likewise, we question whether the 911 documentation is material or admissible. See Williams, 96 Wash.2d at 223, 634 P.2d 868. The only purpose for admitting the 911 call documentation would be to impeach Inspector Smith's and Detective Kimsey's credibility. But newly discovered evidence that is merely cumulative or impeaching is not sufficient grounds to grant a new trial. CrR 7.8; Williams, 96 Wash.2d at 223, 634 P.2d 868.
¶ 29 Pierce's self-serving declarations do not support his contention that the 911 call documentation could not have been discovered before trial, would have likely changed the trial outcome, was material and admissible, and was not merely cumulative or impeaching evidence. See Williams, 96 Wash.2d at 223, 634 P.2d 868.[10] The trial court did not *244 abuse its discretion when it denied his motion for a new trial.

PERSONAL RESTRAINT PETITION
¶ 30 We now turn to Pierce's consolidated PRP. As a personal restraint petitioner, Pierce may not renew an issue that he raised and we rejected on direct appeal unless the interests of justice require relitigation of that issue. In re Pers. Restraint of Taylor, 105 Wash.2d 683, 688, 717 P.2d 755 (1986). He may raise new issues, however, including both errors of constitutional magnitude and nonconstitutional errors. In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990); In re Pers. Restraint of Hews, 99 Wash.2d 80, 87, 660 P.2d 263 (1983).
¶ 31 In the PRP context, to prevail on a claim of constitutional error, Pierce must demonstrate actual and substantial prejudice. In re Pers. Restraint of Mercer, 108 Wash.2d 714, 721, 741 P.2d 559 (1987). And to prevail on a nonconstitutional claim, he must show "a fundamental defect which inherently results in a complete miscarriage of justice." In re Cook, 114 Wash.2d at 812, 792 P.2d 506. Regardless of whether he bases his challenges on constitutional or nonconstitutional error, Pierce must support his petition with facts or evidence supporting his claims of unlawful restraint and not rely solely on conclusory allegations. In re Cook, 114 Wash.2d at 813-14, 792 P.2d 506.

A. FIREARM ENHANCEMENTS
¶ 32 Pierce raises an issue that he previously raised in his initial appeal. See State v. Pierce, noted at 135 Wash.App. 1014, 2006 WL 2924475 at *11-12, review denied, 161 Wash.2d 1016, 171 P.3d 1056 (2007). He contends that the trial court erred by imposing a sentence for a firearm enhancement rather than a deadly weapon enhancement. Pierce maintains that the State charged him by information with being "armed with a deadly weapon" as to counts I, VIII, IX, X, and XI, and the jury was instructed on deadly weapon enhancements as to counts I, VIII, IX, X, and XI; however, the trial court sentenced him to firearm enhancements. Thus, he concludes that under State v. Recuenco, 163 Wash.2d 428, 180 P.3d 1276 (2008), the sentencing court erroneously imposed firearm enhancements instead of deadly weapon enhancements on counts I, VIII, IX, X, and XI. In arriving at this conclusion, Pierce implies that the interest of justice requires relitigation of this issue. See In re Taylor, 105 Wash.2d at 688, 717 P.2d 755.
¶ 33 We agree, although on slightly different grounds, that the interest of justice requires reconsideration of this issue. "[I]n order to prove a firearm enhancement, the State must introduce facts upon which the jury could find beyond a reasonable doubt the weapon in question falls under the definition of a `firearm': `a weapon or device from which a projectile may be fired by an explosive such as gunpowder.'" Recuenco, 163 Wash.2d at 437, 180 P.3d 1276 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.10.01 (Suppl. 2005)). To uphold a firearm enhancement, the State must present the jury with sufficient evidence to find a firearm operable under this definition. Recuenco, 163 Wash.2d at 437, 180 P.3d 1276 (citing State v. Pam, 98 Wash.2d 748, 754-55, 659 P.2d 454 (1983), overruled in part on other grounds by State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988)).
¶ 34 Here, the State failed to present sufficient evidence from which a reasonable jury could find that the firearm Pierce allegedly used during the commission of the crimes was operable. There is no evidence that the firearm with which Pierce was armed was capable of firing a projectile.[11] Moreover, the trial court instructed *245 the jury on deadly weapon enhancements and not firearm enhancements. Thus, the jury was not required to find that the alleged firearm was operable. Accordingly, we hold that the sentencing court exceeded its authority by entering a sentence that does not reflect the jury's findings. See Recuenco, 163 Wash.2d at 439, 180 P.3d 1276; accord State v. Williams-Walker, 167 Wash.2d 889, 225 P.3d 913 (2010); In re Pers. Restraint of Delgado, 149 Wash.App. 223, 237, 204 P.3d 936 (2009). We further hold that there is insufficient evidence in the record to support Pierce's firearm enhancements.[12] RCW 9.41.010; see Recuenco, 163 Wash.2d at 437, 180 P.3d 1276; Pam, 98 Wash.2d at 754-55, 659 P.2d 454. Therefore, we grant Pierce's PRP on this ground, and we remand to the sentencing court with directions that it dismiss Pierce's firearm enhancements and resentence Pierce without the firearm enhancements on counts I, VIII, IX, X, and XL Pam, 98 Wash.2d at 754-55, 659 P.2d 454.[13]
¶ 35 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, J., and VAN DEREN, C.J.
NOTES
[1] RAP 10.10.
[2] RAP 16.4.
[3] Unless otherwise noted, the facts are from this court's decision in Pierce's first appeal, State v. Pierce, noted at 135 Wash.App. 1014, 2006 WL 2924475 (2006), review denied, 161 Wash.2d 1016, 171 P.3d 1056 (2007).
[4] We use the Cobles' first names for clarity.
[5] Pierce did not challenge the sufficiency of the evidence supporting his theft conviction in his initial appeal. See Pierce, 135 Wash.App. 1014, 2006 WL 2924475. He alleged that there was insufficient evidence showing that (1) he was armed with a deadly weapon, (2) he participated in the first degree burglary, (3) he committed theft of firearms at the Cartwright residence (five convictions for theft of a firearm), (4) he assaulted the Cobles, and (5) he possessed methamphetamine with intent to deliver.
[6] State v. Taylor, 90 Wash.App. 312, 950 P.2d 526 (1998).
[7] State v. Freeman, 153 Wash.2d 765, 108 P.3d 753 (2005).
[8] Pierce assigns no error to the trial court's findings of fact or conclusions of law in his direct appeal.
[9] Pierce does not challenge the trial court's denial of his motion for a new trial under CrR 7.5.
[10] Because the evidence was merely impeaching, we do not address Pierce's SAG contention that he was denied the effective assistance of counsel because his defense counsel failed to subpoena law enforcement officers for the CrR 7.8 hearing. See State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995) (To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice.).
[11] During oral argument, the State did not contend that it presented any evidence that Pierce had used an operable firearm during the commission of his offenses but instead argued that it was not required to have the weapon in order to support a firearm enhancement. This may be true when there is other evidence of operability, such as bullets found, gunshots heard, or muzzle flashes. Although the evidence is sufficient to prove an element of the offense of robbery or burglary or a deadly weapon enhancement, where proof of operability is not required, the evidence here is insufficient to support the imposition of a firearm sentencing enhancement where proof of operability is required. See Recuenco, 163 Wash.2d at 437, 180 P.3d 1276; Pam, 98 Wash.2d at 754-55, 659 P.2d 454.
[12] Although the record on appeal does not contain the full trial transcript, because the State does not assert that it presented any evidence that the firearm was operable and asserts that it was not required to do so, it cannot meet its burden to prove that failing to instruct the jury on this element was harmless beyond a reasonable doubt. See State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988) (a jury instruction that omits an element of the offense is subject to constitutional harmless error analysis); State v. Miller, 131 Wash.2d 78, 90, 929 P.2d 372 (1997) (State bears the burden of proving constitutional errors harmless beyond a reasonable doubt).
[13] Because we vacate Pierce's firearm enhancements, we do not address his contention that his firearm enhancements violate double jeopardy. But see State v. Kelley, 168 Wash.2d 72, 226 P.3d 773 (2010) (holding that the imposition of a firearm enhancement does not violate double jeopardy when an element of the underlying offense is use of a firearm). Moreover, we do not address his argument that he was denied the effective assistance of counsel on appeal because his appellate counsel failed to challenge the firearm enhancements. In re Matter of Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983) ("A case is moot if a court can no longer provide effective relief.").