FILED
COURT OF APPEALS
DIVISION II

2014 JUN -3 AM 8: 34

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43166-1-II |
| Respondent, | |
| v. | |
| CHRISTOPHER MICHAEL CLAUSEN, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P.J. — Christopher Michael Clausen appeals his jury trial conviction for third degree child rape. He argues that (1) his trial counsel provided ineffective assistance, (2) the trial court erroneously denied his motion for a new trial, (3) he is entitled to relief under the cumulative error doctrine, and (4) the trial court abused its discretion by imposing impermissible community custody conditions. We affirm Clausen's conviction but remand to the sentencing court to strike the non-crime related community custody conditions.

## FACTS

### I. CHILD RAPE

Nineteen-year-old Christopher Michael Clausen met 14-year-old REM[1] at the local library. On March 1, 2010, after "hanging out" at the library, REM, Clausen, and three other people walked around Gig Harbor, visited an abandoned movie theatre and a Safeway, and then dispersed. Report of Proceedings (RP) at 118. Clausen walked REM home, taking a "back way" that led past a baseball field, where they stopped to sit and talk. RP at 122. Clausen asked REM

---

[1] To provide some confidentiality, we use initials be used in the body of the opinion to identify some parties and juveniles involved.

her age; she replied that she was 14 years old. Clausen tickled REM, massaged her back, progressed into kissing, performed oral sex on her, and engaged in penile/vaginal intercourse. Clausen asked REM not to tell anyone about what had happened.

REM arrived at her grandmother's house around 9:20 PM. REM's grandmother, Margaret McConnell, was upset that REM had been out late. REM went to bed without telling anyone about the incident. The next day, REM called her father and told him about her sexual experience. According to REM, her father seemed "slightly concerned" and apparently shared his concern with McConnell, who confronted REM later that day, and drove her to St. Anthony's Hospital for an examination. RP at 142. REM spoke with hospital staff, who called police to investigate.

Gig Harbor Police Officer Gary Dahm interviewed REM, who reported the various activities of the night before and identified Clausen as the man with whom she had had sexual intercourse. Dahm and Gig Harbor Police Officer Dan Welch arrested Clausen, advised him of his *Miranda*[2] rights, and began questioning him in Dahm's patrol car after Clausen waived his rights. Clausen initially told Dahm that he had been at a video game store the night before; but when faced with the details of REM's account, he eventually admitted having had consensual sex with a girl he claimed was 16 years old. The officers booked Clausen into the Pierce County jail.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## II. PROCEDURE

The State charged Clausen with one count of third degree child rape. Before trial, defense counsel endorsed the following statutory defense:

> In any prosecution under this chapter in which the offense or degree of the offense depends on the victim's age, it is no defense that the perpetrator did not know the victim's age, or that the perpetrator believed the victim to be older, as the case may be: PROVIDED, That it is a defense which the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed the alleged victim to be the age identified in subsection (3)[3] of this section based upon declarations as to age by the alleged victim.

RCW 9A.44.030(2). The court held a CrR 3.5 hearing and ruled that Clausen's statements to the officers were admissible. REM, McConnell, Officers Dahm and Welch, and Kelly Morris (the forensic nurse who examined REM) testified at trial; Clausen did not testify at trial. The jury found Clausen guilty of third degree child rape.

The trial court sentenced Clausen to 60 months confinement and a term of community custody up to 36 months, not to exceed the statutory maximum. The trial court imposed a number of mandatory and non-mandatory community custody provisions contained in appendix H to the judgment and sentence,[4] including the following non-mandatory community custody conditions, which he challenges in this appeal:

15. Hold no position of authority or trust involving children under the age of 18.

---

[3] RCW 9A.44.030(3)(c) provides:
For a defendant charged with rape of a child in the third degree, that the victim was at least sixteen, or was less than forty-eight months younger than the defendant.

[4] It appears that the trial court used an outdated appendix H form. It included "up to life community custody" under former RCW 9.94A.712 (2008), which was recodified as RCW 9.94A.507 in 2009, a year before Clausen committed his offense. Clerk's Papers at 231. *See* LAWS OF 2008, ch. 231, § 56, *effective* August 2, 2009.

16. Do not initiate, <u>or have in anyway,</u> physical contact with children under the age of 18 for any reason. Do not have any contact with physically or mentally vulnerable individuals.

. . . .

18. Inform your community custody corrections officer of any romantic relationships to verify there is no victim-age children involved.

19. Submit to polygraph testing upon direction of your community corrections officer and/or therapist at your expense. You must successfully pass all polygraph tests, and indicate no deception at any time on the test.

. . . .

21. Do not go to or frequent places where children congregate, (I.E. Fast-food outlets, libraries, theaters, shopping malls, play grounds and parks, etc.) unless otherwise approved by the Court[.]

. . . .

25. You shall not have access to the Internet at any location nor shall you have access to computers unless otherwise approved by the Court. You also are prohibited from joining or perusing any public social websites (Facebook, MySpace, etc.)[.]

. . .

27. Do not possess or peruse any sexually explicit materials in any medium. Your sexual deviancy treatment provider will define sexually explicit material. Do not patronize prostitutes or establishments that promote the commercialization of sex.

Clerk's Papers (CP) at 232-33.

Clausen moved for a new trial under CrR 7.5(a)(3) and CrR 7.8(b)(2), and moved to strike the contents of his presentence interview. The trial court denied these motions. Clausen appeals his conviction and several community custody provisions of his judgment and sentence.

## ANALYSIS

### I. EFFECTIVE ASSISTANCE OF COUNSEL

Clausen first argues that trial counsel was ineffective in (1) failing to indentify and to adhere to a cohesive defense strategy, despite her endorsement of the statutory defense under RCW 9.A.44.030(2); (2) being routinely unprepared to present legal matters to the trial court;

and (3) failing to investigate, which resulted in ineffective cross-examination of REM or presentation of evidence to the jury to support his defense. This argument fails.

## A. Standard of Review

To demonstrate ineffective assistance of counsel, a defendant must show both that (1) "defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances"; and (2) "defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We begin with the strong presumption that defense counsel's representation was effective. *McFarland*, 127 Wn.2d at 335; *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). Failure to show either prong of the test defeats an ineffective assistance of counsel claim. *McFarland*, 127 Wn.2d at 334-35. Here, because Clausen fails to demonstrate prejudice, we do not address the deficient performance prong of the ineffective assistance of counsel test.

## B. No Prejudice

To demonstrate prejudice, Clausen must show that there is a reasonable probability, absent counsel's unprofessional errors, that the result of the trial would have been different. *McFarland*, 127 Wn.2d at 334-35. Much of Clausen's argument focuses on trial counsel's failure to develop a coherent defense because of counsel's nonexistent investigation. Clausen, however, fails to establish prejudice: *Even assuming* the truth and admissibility of the evidence Clausen has proffered since trial, including defense counsel's alleged failure to investigate, to succeed under this statutory defense theory, Clausen needed to establish that *based on REM's*

5

*own statements*, he reasonably believed that she was 16 or older at the time they had sexual intercourse. *See* RCW 9A.44.030(2). REM would still have testified that she specifically told Clausen she was 14 on the night of the statutory rape; and none of Clausen's purported newly discovered evidence[5] would have controverted her testimony, despite his attempt to impeach her collaterally. Thus, Clausen cannot show a reasonable probability that the jury would have acquitted him on his unsupported theory that he reasonably believed REM was older. Thus, Clausen cannot establish that he suffered prejudice from the arguably deficient investigation performed by trial counsel. Consequently, his ineffective assistance of counsel challenge fails.

### C. Presentence Interview

Clausen argues that (1) trial counsel waived his right to representation at the presentence interview without his consent, discussion, or notification; and (2) because the presentence interview is a "critical stage" of the proceedings, this "complete denial" of counsel during this stage is presumptively prejudicial and per se ineffective assistance of counsel. Br. of Appellant at 32. Clausen asks us to strike the entire presentence report and to order a new second presentence report or, alternatively, to strike the "risk/needs assessment," which could be used for sex offender registration classification at a later date. Br. of Appellant at 36. Clausen's argument fails because he cannot demonstrate that the presentence interview was a "critical stage" of the proceeding for which he had a constitutional right to counsel.

A critical stage is one "in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially

---

[5] Clausen argues that there were witnesses who would have testified that REM stated she was 16 years old or older in Clausen's presence.

affected." *State v. Agtuca*, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974). Clausen relies on *State v. Everybodytalksabout*, 161 Wn.2d 702, 166 P.3d 693 (2007), to argue that a presentence interview is a critical stage of the proceeding, but this case is distinguishable: That case focused heavily on (1) the presentence interviewer's questioning Everybodytalksabout concerning the facts underlying his conviction in the absence of defense counsel and without first informing defense counsel; and (2) the State's use of the resulting presentence interview, which contained Everybodytalksabout's incriminating statements, as critical evidence against him at his third trial. *Everybodytalksabout*, 161 Wn.2d at 710-12. Our Supreme Court held that because the presentence interview was not confined to aiding the trial court in determining Everybodytalksabout's sentence, but was instead used for the State's adversarial purpose of convicting him at a later trial, the presentence interview was a "critical stage" of the proceeding to which the right to counsel attached. *Everybodytalksabout*, 161 Wn.2d at 712-14.

Here, in contrast, (1) Clausen's counsel specifically instructed the presentence interviewer not to ask questions about Clausen's current charges during the interview, which took place in counsel's absence; (2) the presentence interviewer abided by counsel's request and collected information about only Clausen's background and prior convictions; and (3) the resulting presentence report does not contain incriminating information from Clausen that the State could use to convict him in a subsequent proceeding. Thus, *Everybodytalksabout* does not apply.

Clausen further argues that the information contained in the presentence report is of special significance in cases involving a sex offense because the State may use it to determine his sex offender classification level in the future. But he cites no authority to support his contention

that, for this reason, a presentence interview in a sex offense case is a "critical stage" of the proceeding entitling him to the assistance of counsel. On the contrary, our Supreme Court noted in *Everybodytalksabout* that many federal courts have concluded that standard presentence interviews are not adversarial in nature and are not a "critical stage" of the proceeding for Sixth Amendment[6] right to counsel purposes. *See Everybodytalksabout*, 161 Wn.2d at 709-10 (citing *United States v. Jackson*, 886 F.2d 838 (7th Cir. 1989)).

We hold that, because the presentence report interviewer did not ask Clausen questions about his current offense and the proceeding was not adversarial in nature so as to trigger a right to counsel, his claim of lack of counsel assistance at the presentence interview fails. Therefore, we deny his request to strike the presentence report.

## II. MOTION FOR NEW TRIAL

Clausen next argues that the trial court erred in denying his motion for a new trial and/or relief from judgment based on newly discovered evidence under CrR 7.5(a)(3)[7] and CrR 7.8(b)(2),[8] respectively. We disagree.

### A. Standard of Review

A trial court will grant a new trial on the basis of newly discovered evidence only if the moving party demonstrates

---

[6] U.S. CONST. Amend VI.

[7] CrR 7.5(a)(3) permits the trial court to grant a new trial on the basis of "[n]ewly discovered evidence material for the defendant, which the defendant could not have discovered with reasonable diligence and produced at the trial."

[8] CrR 7.8(b)(2) permits a court to relieve a party from a final "judgment, order, or proceeding" on the basis of "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 7.5."

8

'that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching.'

*In re Brown*, 143 Wn.2d 431, 453, 21 P.3d 687 (2001) (quoting *State v. Williams*, 96 Wn.2d 215, 222-23, 634 P.2d 868 (1981)). The absence of even one of these five factors is grounds for denying a new trial. *In re Brown*, 143 Wn.2d at 453. A new trial is necessary only when the defendant "'has been so prejudiced that nothing short of a new trial can insure that the defendant will be treated fairly.'" *State v. Bourgeois*, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997) (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

Absent a clear abuse of discretion by the trial court, we will not reverse an order denying a motion for new trial (CrR 7.5) or for relief from the judgment (CrR 7.8). *Bourgeois*, 133 Wn.2d at 406; *State v. Pierce*, 155 Wn. App. 701, 710, 230 P.3d 237 (2010). A trial court abuses its discretion when it bases its decisions on untenable or unreasonable grounds. *Pierce*, 155 Wn. App. at 710. Such is the not case here.

## B. Newly Discovered Evidence

The trial court denied Clausen's CrR 7.5 motion as untimely. On appeal, Clausen does not appear to contest this ruling. Instead, he seems to appeal only the trial court's denial of his CrR 7.8(b)(2) motion and its ruling that the newly discovered evidence could have been discovered earlier through due diligence. Thus, we address only Clausen's contention that the trial court should have granted a new trial based on newly discovered evidence.

The State notes that although Clausen's memorandum in support of his motion contains summaries of the proffered testimony of four new witnesses, no affidavits from these witnesses

are included in the record before us on appeal. Moreover, despite Clausen's repeated reference to appendices A-D (presumably these witnesses' affidavits), these appendices were not designated as Clerk's Papers on appeal, and there is no clear evidence in the record before us suggesting that Clausen even presented these appendices to the trial court.

Although referenced in the original motion below and in appellant's brief, the record before us on appeal includes no affidavits from the newly discovered witnesses, as CrR 7.8(c)(1) requires. *See State v. Bandura*, 85 Wn. App. 87, 94, 931 P.2d 174 (1997); *State v. Hobbs*, 13 Wn. App. 866, 869, 538 P.2d 838 (1975). Clausen's failure to include such affidavits in the record before us on appeal precludes our consideration of them when reviewing the trial court's denial of his motion for a new trial. *See* RAP 9.6(b); *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994) (insufficient record on appeal generally precludes review of alleged errors). Because Clausen fails to present for our review newly discovered evidence that would "'probably change the result of the trial,'" we affirm the trial court's denial of his motion for a new trial on this ground alone. *In re Brown*, 143 Wn.2d at 453 (quoting *Williams*, 96 Wn.2d at 222-23). Therefore, we hold that the trial court did not abuse its discretion in denying Clausen's motion for a new trial or from relief from judgment.

### III. NO CUMULATIVE ERROR

Clausen further argues that he is entitled to relief under the cumulative error doctrine because the combined effect of his claimed errors denied him a fair trial. In addition to the arguments we have already addressed, Clausen argues that he is entitled to reversal of his conviction and a new trial because (1) trial counsel was grossly inexperienced to the point of complete incompetence; (2) newly discovered evidence casts serious doubt on the credibility of

REM and her grandmother, McConnell; and (3) McConnell's multiple conflicting versions of the events of March 1 and 2 demonstrate that her testimony was not truthful.

Cumulative error may justify reversal, even when each individual error would otherwise be considered harmless; but the doctrine does not apply where there are few errors or the errors have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Clausen has failed to establish any single reversible error, let alone a combination of errors that denied him a fair trial. Thus, his claim of cumulative error fails.

## IV. IMPROPER COMMUNITY CUSTODY CONDITIONS

Lastly, Clausen challenges the validity of several non-mandatory community custody conditions that the trial court imposed under RCW 9.94A.703. Clausen appears to challenge conditions 15, 16, 18, 19, 21, 25, 26, and 27[9] on grounds that they are not fact specific to his offense, do not relate to the circumstances surrounding the offense or his risk of reoffense, or are overbroad. We agree with Clausen's challenges to a portion of condition 16 and his challenges to conditions 19, 25, and 27. To the extent that he challenges other conditions, these challenges fail.

---

[9] In his assignments of error, Clausen fails to identify the specific conditions he challenges, stating only in general, the "[t]rial court erred when it imposed *certain* conditions in the Judgment and Sentence." Br. of Appellant at 1 (emphasis added). In his argument, however, Clausen provides substantive analysis for his challenge to conditions 15, 16, 18, 19, 21, 25, and 27, which conditions we address here.

In contrast, he does not provide substantive analysis for a challenge to condition 26, which the State describes as "unchallenged." Br. of Resp't at 30. We further note that Clausen's brief contains the following unclear list: "Numbers 11, 12, 17, 19, 23, 26, 27." Br. of Appellant at 52. Because Clausen relates this list to a crime not at issue in this appeal, we assume that this list was a typographical error. Thus, we do not address conditions included in this list that Clausen does not support with argument and analysis in his brief, such as condition 26.

No. 43166-1-II

RCW 9.94A.505(8) permits a court to impose "crime–related" prohibitions as part of a sentence,[10] and RCW 9.94A.703(3)(f) permits a court to order compliance with those prohibitions as a condition of community custody. A "crime-related" prohibition is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10)[11]. Thus, discretionary, or non-mandatory, conditions imposed by the trial court must be either crime-related prohibitions under RCW 9.94A.505(8) or authorized under RCW 9.94A.703(3).[12]

A. Standard of Review

A defendant may challenge an illegal or erroneous sentence for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008); *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003). We review de novo whether the trial court had statutory authority to impose community custody conditions. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

---

[10] RCW 9.94A.505(8) provides: "As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter."

[11] The legislature amended RCW 9.94A.030 in 2012. LAWS OF 2012, ch. 143 § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[12] RCW 9.94A.703(3) provides:
**Discretionary conditions.** As part of any term of community custody, the court may order an offender to:
(a) Remain within, or outside of, a specified geographical boundary;
(b) Refrain from direct or indirect contact with the victim of the crime or a specified class of individuals;
(c) Participate in crime-related treatment or counseling services;
(d) Participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community;
(e) Refrain from consuming alcohol; or
(f) Comply with any crime-related prohibitions.

12

If the condition was statutorily authorized, we review crime-related prohibitions for abuse of discretion. *Armendariz*, 160 Wn.2d at 110 (citing *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001)). But conditions that do not reasonably relate to the circumstances of the crime, the risk of reoffense, or public safety are unlawful, unless explicitly permitted by statute. *See Jones*, 118 Wn. App. at 207-08.

## B. Contact with Children Under 18

Clausen challenges conditions 15, 16, 18, and 21 as being overbroad or unrelated to his statutory rape conviction. Condition 15 prohibits Clausen from holding a position of authority or trust involving children under 18. Although Clausen's crime did not involve a position of trust or authority, it did involve a child under 18; thus, condition 15 is authorized by RCW 9.94A.505(8) ["crime-related prohibitions"] and RCW 9.94A.703(b) [refrain from contact with "specified class of individuals"] and (f) ["crime-related prohibitions"] because it directly relates to the circumstances of Clausen's offense—statutory rape of a 14-year-old.

Similarly, condition 16, which prohibits Clausen from engaging in physical contact with children under 18 is a valid-crime related prohibition, again, because Clausen's offense involved direct physical contact with a child under 18. The portion of condition 16 that prohibits Clausen from engaging in physical contact with vulnerable adults, however, is not directly related to the circumstances of Clausen's offense; therefore, this portion of condition 16 does not comply RCW 9.94A.505(8) or RCW 9.94A.703(f) and must be stricken.

Condition 18, which requires Clausen to disclose to his community corrections officer (CCO) any romantic relationships, reasonably relates to the circumstances of his offense and his risk for reoffense because the purpose of the condition is to prevent his continuing to engage in

13

sexual relationships with under-aged children; as in the instant case, he claimed to have believed REM was of legal age, not merely 14. Thus, it is "affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community," authorized under RCW 9.94A.703(3)(d).

Condition 21 prohibits Clausen from frequenting places were children congregate, such as malls, libraries, and fast-food restaurants. This condition directly relates to the circumstances of Clausen's offense because Clausen, as one of a group of older teens, met REM at a library. Thus, condition 21 is a valid crime-related prohibition under RCW 9.94A.505(8) and also related to reduce his risk of reoffending, authorized under RCW 9.94A.703(3)(d).

### C. Polygraph Testing

Clausen argues that condition 19, requiring him to submit to polygraph testing at the discretion of his CCO, is overly broad because it gives the CCO unfettered discretion to include any subject in the polygraph. This condition requires Clausen to

> [s]ubmit to polygraph testing upon direction of your community corrections officer and/or therapist at your expense. You must successfully pass all polygraph tests, and indicate no deception at any time on the test.

CP at 233. Our Supreme Court has expressly held that polygraph testing is a valid community custody monitoring condition. *See State v. Riles*, 135 Wn.2d 326, 342, 957 P.2d 655 (1998), *overruled in part on other grounds by State v. Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010). Thus, the polygraph condition is valid to test Clausen's compliance with the conditions of his community custody.

Here, however, the State appears to concede that the condition may be overly broad as written (because it was likely part of a psychosexual treatment plan that was not yet in place at

the time the court ordered the condition) and that, on remand, the trial court should specify a more narrow application. We agree.

### D. Access to Computers and Internet

Clausen argues that condition 25 (which prohibits him from having access to the Internet or a computer unless approved by the court) is completely unrelated to his conviction. Although the State never alleged or introduced evidence suggesting that the Internet or computers played any role in Clausen's offense, the State argues that condition 25 is a necessary component of Clausen's psychosexual treatment plan ordered in condition 11 and, therefore, is statutorily authorized under RCW 9.94A.703 and .704. The State concedes, however, that a psychosexual treatment plan was not in place at the time the trial court ordered these conditions[13]; but it cites no authority suggesting that a sentencing court may preemptively impose a community custody condition, unrelated to the offense, because it is a *potentially* "necessary" component of a future, yet to be announced, treatment plan. Br. of Resp't at 30. Furthermore, although the State also cites RCW 9.94A.704 as authorizing condition 25, this statute applies only to conditions imposed by the Department of Corrections (DOC), not by the sentencing court.

Condition 25, prohibiting access to the Internet or computers, is unrelated to Clausen's crime and is not authorized by RCW 9.94A.505(8) or RCW 9.94A.703. Nothing in the record connects this community custody condition to the instant offense, to the risk of reoffense, or to

---

[13] *See, e.g.*, condition 26, which requires Clausen to obtain a psychosexual evaluation, arguably a necessary precursor to a treatment plan.

any community safety issues expressly brought to the trial court's attention, as required under RCW 9.94A.703(3)(d). Thus, the trial court erred in imposing this condition.[14]

### E. Sexually Explicit Materials

Clausen argues that condition 27, which prohibits his possessing or perusing sexually explicit material and patronizing establishments that promote the commercialization of sex, also fails as a crime-related prohibition. We agree with Clausen there is no evidence in the record suggesting that he possessed or perused sexually explicit material in connection with his crime. The State counters that this condition, like conditions 19 and 25, is likely part of psychosexual treatment plan. Again, as with condition 25, the State provides no authority that the trial court may preemptively impose such a condition. Thus, condition 27 does not qualify as a crime-related prohibition under RCW 9.94A.030(1) or RCW 9.94A.703(3)(f).

Nor was condition 27 authorized by RCW 9.94A.703(3)(d) at the time of Clausen's sentencing. If, after a psychosexual evaluation, the DOC concludes that this condition is a necessary component of Clausen's treatment, the DOC may then impose it under RCW 9.94A.704. At this point, however, it must be stricken.

We affirm Clausen's conviction, but we remand to the trial court (1) to strike the portion of condition 16 prohibiting Clausen from engaging in physical contact with vulnerable adults; (2) to tailor more narrowly the polygraph testing parameters of condition 19; (3) to strike condition 25's prohibition of access to the Internet and to computers; and (4) to strike condition 27's

---

[14] Our holding that the trial court lacked statutory authority to impose this prohibition as a condition of community custody does not preclude the DOC, Clausen's CCO, or Clausen's treatment provider from imposing such restrictions as part of his treatment plan, rehabilitation, or release conditions, none of which are before us here.

No. 43166-1-II

prohibition of possessing sexually explicit materials or patronizing establishments that promote the commercialization of sex. We affirm the other challenged community custody conditions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, P.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.

17